IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ADASA INC.,

        Plaintiff,

        v.

AVERY DENNISON CORPORATION,

        Defendant.

6:17-cv-01685-TC

Opinion and Order

This is a patent action in which this court has full consent. Presently before the court is the construction of the claims. There have been no filings of motions for summary judgment at this point in the litigation.

## FACTUAL BACKGROUND

Plaintiff and counter defendant ADASA Inc.'s (plaintiff Adasa) and defendant and counter claimant Avery Dennison Corporation (Defendant Avery) seek construction of the terms of plaintiff Adasa's '967 patent.

The '967 Patent is related to merchandise tracking. As alleged by plaintiff Adasa, in merchandising tracking applications, the memory bank of an RFID[1] tag is encoded with an Electronic Product Code. The Electronic Product Code is an identifier for an item in the supply chain to uniquely identify that particular item. This identifier is serialized to be unique for avoidance of duplicate numbers among items in the supply chain.

Plaintiff alleges that "[t]he '967 Patent generally speaking, relates in part, to systems for encoded and commissioned wireless radio frequency identification ('RFID') devices." Paragraph 7 of Complaint.

The parties are familiar with the complex underlying technology in this field and it is addressed as needed below.

A Claim Construction Hearing was held after extensive briefing on the issues.[2]

---

[1]RFID stands for "Radio Frequency Identification Device."

[2]This court granted plaintiff's motion to amend the complaint at the beginning of the hearing.

2 - OPINION AND ORDER

## DISCUSSION

The applicable Claim Terms as presented by the parties and this court's constructions thereof follow.

I. TERMS WITH AGREED UPON CONSTRUCTIONS

1. <u>object class information space</u>

The parties agree such phrase should be construed as "data field within the memory of the RFID integrated circuit chip for information identifying the class of an object, such as a company prefix, item reference code, partition value, and/or filter value."

2. <u>unique serial number space</u>

The parties agree such phrase should be construed as " data field within the memory of the RFID integrated circuit for information identifying a unique serial number."

3. <u>being assigned a limited number of most significant bits</u>

The parties agree such phrase should be construed as "includes a limited, predefined sequence of higher order bits at the leading end."

4. <u>remaining bits of lesser significance</u>

The parties agree such phrase should be construed as "the remaining lower order bits at the trailing end."

II. TERMS WITH DISPUTED CONSTURCTIONS

As explained in further detail below, this court ultimately construes the terms with disputed constructions in accordance the language proposed by plaintiff Adasa.

1. is encoded with one serial number instance

Plaintiff Adasa argues that this phrase should be construed as "[h]as stored within it one serial number instance."

Defendant Avery initially argued that the phrase should be construed with plaintiff's language and the addition of " stored by an encoder that does not need to communicate with a central database to ensure that the serial number is unique." P.2 of Defendant Avery Response (#62). Defendant Avery subsequently conceded that its proposed construction was not appropriate as it did not take into consideration the fact that "an RFID encoding scheme may use a variety of computers to host serial number databases, not just a 'central database.'" Id . Defendant Avery than proposed a different construction as follows: "Has stored within it one serial number instance, stored by an encoder that does not need a continuous connection with any serial number database to ensure that the serial number is unique." Id.

In support of its constructions, defendant Avery argues that plaintiff Adasa's constructions are improper because plaintiff Adasa disavowed claim scope during the reexamination of its claims.

4 - OPINION AND ORDER

However, find from the material before the court that Adasa did not disavow its claim scope during the reexamination proceedings: Adasa, for example, did not disavow all uses of a central database for its hardware-based numbering scheme -such hardware-based numbering scheme can be used in direct connection with a central data base or in a less direct, ad hoc mode.

As explained in detail by plaintiff Adasa, the '967 Patent was reviewed for patentability in an Ex Parte Reexamination. During reexamination, plaintiff Adasa filed briefs and supporting declarations with the Patent and Trademark Office (PTO) arguing against the Examiner's rejections arising from two prior art combinations. Plaintiff Adasa made the same arguments to overcome the Examiner's rejections consistently throughout the reexamination proceedings. Plaintiff Adasa repeatedly pointed to the partitioned memory structure within the claimed RFID transponders, accommodating a serial number instance with most significant bits along with bits of lesser significance, as a novel feature within the claims of the '967 Patent not in any prior art combinations. In its response to the PTO, plaintiff Adasa was explaining that the prior art was focused on a centralized scheme operated entirely by a central database, which was the sole manner of ensuring uniqueness of the Electronic Product Codes that were to be later encoded to RFID transponders, but the asserted claims require and utilize a hardware - based approach that is used on top of any

5 - OPINION AND ORDER

central database scheme for uniqueness. Plaintiff Adasa then went on to describe to the PTO the hardware based numbering scheme in greater detail , noting that "[t]his hardware- based approach of the '967 Patent manages assignments of the serial number at the binary level by partitioning the bits of the serial number space into a limited number of most significant bits and a remaining number of least significant bits." P. 14 of #59-3.

I agree with plaintiff Adasa that a proper reading of the arguments to the PTO reveals that the novel feature within the challenged claims is the use of a "hardware-based numbering scheme" which is manifest in the claims through inclusion of requiring that the serial number space comprises a limited number of most significant bits which corresponds to the most significant bits of an allocated block. This scheme adds an additional layer of insurance that all serial numbers assigned will be unique, which is a fundamental requirement of RFID systems. Plaintiff Adasa explicitly stated that it is the "hardware -based numbering scheme" feature that is missing from the prior art, and that such prior art relies only on continuous connections to a central database to ensure uniqueness. Importantly, neither plaintiff Adasa nor its expert declarant before the PTO declared these two schemes for ensuring uniqueness as being mutually exclusive such that an RFID

6 - OPINION AND ORDER

tagging system could not or would not implement both.³ Rather, it was noted that the use of the claimed scheme merely "allows" for commissioning of RFID tags without continuous connection to a database. P.p. 4, 16 of #59-3; Paragraphs 43, 50 of # 59-2. Prior art systems utilized only a single means for ensuring uniqueness- constant connection to a central database- rather than a layered scheme also utilizing serial numbers comprising a limited number of most significant bits.

Some of plaintiff Adasa's arguments were not initially found persuasive by the Examiner and the non-final rejections of the claims of the '967 Patent were maintained in the subsequent Final Office Action. The Examiner posited that the distinctions made by Adasa relating to the hardware -based numbering scheme could not be a basis for novelty because they related only to the process by which the claimed RFID transponders were made rather than the structural elements of the RFID transponders. In plaintiff Adasa's Amendment in Response to Final Office Action dated May 14, 2018, Adasa successfully argued against this position asserting that " claim 1 should be interpreted to include the structural limitation that the encoded serial number space must include a serial number instance that was selected from an allocated block

---

³ Plaintiff Adasa has demonstrated that despite the occasional use of the phrase "in essence" in conjunction with the ad hoc mode , there is not claim disavowal.

7 - OPINION AND ORDER

that was specifically assigned (or allocated) based on a limited number of most significant bits" p. 10 of #59-7. To that end, Adasa made a clarifying amendment to the claims of the '967 Patent for the purpose of clarifying that the most significant bits uniquely correspond to the allocated block in support of Adasa's position that the claimed serial number structure is a structural limitation of the claimed RFID transponders.[4]

The positions taken by both Adasa and the Examiner with respect to the final rejection, clarifying amendment, and subsequent confirmation of validity of the claims of the '967 Patent as presented in the Reexamination Certificate do not relate at all to limitations of the process for how the claimed RFID transponders are encoded. There is little to no discussion of continuous connection to a central database, autonomous or quasi-autonomous encoding, or how the allocated block is derived or assigned. The discussion focuses solely on the novel feature advanced throughout the reexamination by Adasa – that the claimed RFID transponders utilize a partitioned serial number space comprising most significant bits that was not present in any prior art references.

---

[4] In support of its disavowal argument, defendant Avery cites Poly-America, L.P. v. API Indus., Inc., 839 F.3d 1131, 1136 (Fed Cir. 2016) and Krippelz v. Ford Motor Co., 667 F.3d 1261, 1267 (Fed. Cir. 2012). However, I find that such cases are distinguishable and, as Adasa argued to the PTO, the patent at issue is more akin to In Re Nordt, 881 F.3d 1371 (Fed Cir. 2018). See p.p. 50-54 of Transcript (#67).

8 – OPINION AND ORDER

2. an allocated block of serial numbers

Plaintiff Adasa argues that this phrase should be construed as "a pre-authorized range of serial numbers." Defendant Avery argues this phrase should be construed as plaintiff Adasa suggests with the addition of the phrase " that has been assigned to an encoder." Defendant Avery makes an argument similar to one above regarding disavowal of claim scope. Such argument is not persuasive for the reasons stated above.

3. Uniquely Corresponding

Defendant Avery acknowledges that the parties' differing constructions may mean the same thing, p. 11 of Response (#62). Based on the above discussion, the phrase "uniquely corresponding" is construed as having its plain and ordinary meaning as plaintiff Adasa suggests.

## CONCLUSION

The claims in this action are construed as discussed above.

DATED this 22 day of January, 2019.

THOMAS M. COFFIN
United States Magistrate Judge

9 - OPINION AND ORDER