UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| ADASA INC., | Case No.: 6:17-cv-01685-MK |
| Plaintiff, | OPINION AND ORDER |
| | RE: DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS UNDER 35 U.S.C. § 271(f) |
| v. | |
| AVERY DENNISON CORPORATION, | |
| Defendant. | |

**KASUBHAI, Magistrate Judge:**

Plaintiff brought this action alleging that Defendant infringed its patent in violation of 35

U.S.C. §§ 271(a), (b), (c), and (f). Second Am. Compl., ECF No. 112.  Both parties consent to

jurisdiction by a U.S. Magistrate Judge. ECF No. 29.

Before the Court is Defendant's Motion for Judgment on the Pleadings as to Plaintiff's

claim under 35 U.S.C. § 271(f). Def.'s Mot. J., ECF No. 115.  For the reasons set forth below,

Defendant's Motion for Judgment on the Pleadings as to the claim under 35 U.S.C. § 271(f)

(ECF No. 115) is DENIED.

# BACKGROUND

Plaintiff, an Oregon corporation, is the owner of the United States Patent No. 9,798,967 (the " '967 Patent"). Am. Compl. Ex. A, the '967 Patent, ECF No. 71-1.  The '967 Patent relates in part to systems for encoded and commissioned wireless radio frequency identification ("RFID") devices. Second Am. Compl. ¶ 8, ECF No. 112; Answer, ¶¶ 8, 11, ECF No. 114.  In the RFID industry and particularly for merchandise tracking applications, the memory bank of an RFID tag is encoded with an Electronic Product Code ("EPC"), which is an identifier for an item in the supply chain to uniquely identify that particular item. Second Am. Compl. ¶ 11, ECF No. 112; Answer ¶ 11, ECF No. 114.  The EPC can be serialized in a format following an EPC tag data standard. Second Am. Compl. ¶ 11, ECF No. 112; Answer ¶ 11, ECF No. 114.  One standard is known as Serialized Global Trade Item Number ("SGTIN"). Second Am. Compl. ¶ 11, ECF No. 112; Answer ¶ 11, ECF No. 114.

Where the SGTIN format is used for item identification, the EPC contains "object class" information and a "serial number." Second Am. Compl. ¶ 12, ECF No. 112; Answer ¶ 12, ECF No. 114.  The "object class" information includes, among other things, "company prefix," which identifies the brand owner and an "item reference number" which identifies the class of item offered by a brand owner (which generally corresponds to the UPC or SKU of a bar code). Second Am. Compl. ¶ 12, ECF No. 112; Answer ¶ 12, ECF No. 114.  The "object class" section of a SGTIN format uniquely identifies different classes of products sold by a particular brand owner. Second Am. Compl. ¶ 12, ECF No. 112; Answer ¶ 12, ECF No. 114.  The companies or brand owners are responsible for assigning a unique serial number for each item of an object class. Second Am. Compl. ¶ 12, ECF No. 112; Answer ¶ 12, ECF No. 114.  The combination of

an object class and a unique serial number provides a unique object number contained in the EPC. Second Am. Compl. ¶ 13, ECF No. 112; Answer ¶ 13, ECF No. 114.

The '967 Patent teaches an RFID transponder or inlay with an RFID integrated circuit chip ("IC chip") having encoded memory structure that ensures uniqueness with the serial number portion of the code. Am. Compl. Ex. A, the '967 Patent, ECF No. 71-1. Specifically, the '967 Patent teaches an RFID IC chip memory structure by delineating a section using the leading bits of the serial number section of the EPC binary encoding – referred to as the "most significant bits" in the '967 Patent. Am. Compl. Ex. A, the '967 Patent, ECF No. 71-1.

Plaintiff alleges that Defendant, a third-party encoder, "makes, encodes, sells, and offers to sell RFID tags and labels for customers that are RFID transponders that comprise a substrate, an antenna, and an RFID IC chip coupled to the antenna." Second Am. Compl. ¶ 22, ECF No. 112. Plaintiff alleges direct infringement of claims 1-6, 12-15 of the '967 Patent by using the format of the '967 Patent in violation of 35 U.S.C. § 271(a). *Id.* ¶¶ 26-35. Plaintiff also alleges indirect infringement of the '967 Patent in violation of 35 U.S.C. §§ 271(b), (c) and (f). *Id.* ¶¶ 36-41.

## LEGAL STANDARD

"A judgment on the pleadings is properly granted when, taking all the allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law." *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001) (quoting *Nelson v. City of Irvine*, 143 F.3d 1196, 1200 (9th Cir. 1998)). Procedural law of the regional circuit governs Rule 12(c) motions for judgment on the pleadings in patent cases. *Amdocs (Israel) Ltd. V. Openet Telecom, Inc.*, 841 F.3d 1288, 1293 (Fed. Cir. 2016). In the Ninth Circuit, a Rule 12(c) motion for judgment on the pleadings is "functionally identical" to a Rule 12(b)(6) motion to dismiss for

failure to state a claim upon which relief could be granted. *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989).

To survive a motion to dismiss, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). When assessing the sufficiency of any civil complaint, a court must distinguish factual contentions – which alleged behavior on the part of the defendant that, if true, would satisfy one or more elements of the claim asserted – and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In short, "a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Id.* (citations and internal quotations omitted).

## DISCUSSION

Defendant seeks judgment on the pleadings as to Plaintiff's claim under 35 U.S.C. § 271(f). Def.'s Mot. J. 2, ECF No. 115. The relevant portion of 35 U.S.C. § 271(f) provides:

> (2) Whoever without authority supplies or causes to be supplied in or from the United States any component of a patented invention that is especially made or especially adapted for use in the invention and not a staple article or commodity of commerce suitable for substantial noninfringing use, where such component is uncombined in whole or in part, knowing that such component is so made or adapted and intending that such component will be combined outside of the United States in a manner that would infringe the patent if such combination occurred within the United States, shall be liable as an infringer.

35 U.S.C. § 271(f)(2).

Plaintiff alleges that

> 42. … [Defendant] is liable under 35 U.S.C. § 271(f) … because it provides from the United States data files that include unique object numbers implementing the unique structure identified in the claims of the '967 Patent which are transmitted to foreign encoding locations operated by [Defendant] or by its customers at the direction of [Defendant]. The unique object numbers are provided with the intent that they be combined with uncommissioned RFID tags and labels to make infringing RFID tags and labels.

43. The unique object numbers are especially made or especially adapted for use in accordance with the inventions claimed in the '967 Patent. Upon information and belief, each data file comprising the unique object numbers is intended for use and used by only to commission RFID tags and labels.

44. The unique object numbers transmitted are not staple articles or commodities of commerce suitable for substantial noninfringing use. They are known to [Defendant] to be especially made or especially adapted for use in accordance with the inventions claimed in the '967 Patent …

Second Am. Compl. ¶¶ 42-44, ECF No. 112.

Defendant presents two arguments to support its position that the § 271(f) claim fails as a matter of law. Def.'s Mot. J. 6-7, ECF No. 115 (citing *Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437 (2006)); Def.'s Reply 2-6, ECF No. 124. First, Plaintiff fails to allege a "component" as required under § 271(f). Def.'s Mot. J. 6, ECF No. 115. Second, there can be no infringement under § 271(f) because the "component" combined with RFID tags are not supplied from the United States but are created in the foreign factories or service bureaus. *Id.* at 6-7. The Court addresses the two issues in turn.

1. The "component" element under 35 U.S.C. § 271(f)

"Section 271(f) applies to the supply abroad of the 'components of a patented invention, where *such components* are uncombined in whole or in part, in such manner as to actively induce the combination of *such components*.' " *Microsoft*, 127 S.Ct. at 449 (citing § 271(f) with emphasis added). In *Microsoft*, Microsoft supplied a master disk containing Windows software from the United States to foreign manufacturers, and copies of the master disk were made abroad and installed on foreign-made computers. *Id.* at 442. There, the U.S. Supreme Court answered the question "when, or in what form, does software qualify as a 'component' under § 271(f)?" *Id.* at 447. In answering this question, the Supreme Court explained:

> Until it is expressed as a computer-readable ''copy,'' *e.g.,* on a CD–ROM, Windows software — indeed any software detached from an activating medium — remains uncombinable. It cannot be inserted into a CD–ROM drive or downloaded from the Internet; it cannot be installed or executed on a computer. Abstract software code is an idea without physical embodiment, and as such, it does not match § 271(f)'s categorization: ''components'' amenable to ''combination.'' Windows abstracted from a tangible copy no doubt is information — a detailed set of instructions — and thus might be compared to a blueprint (or anything containing design information, *e.g.,* a schematic, template, or prototype). A blueprint may contain precise instructions for the construction and combination of the components of a patented device, but it is not itself a combinable component of that device.

*Id.* at 449.  The Court further explained: "before software can be contained in and continuously performed by a computer, before it can be updated or deleted, an actual, physical copy of the software must be delivered by CD–ROM or some other means capable of interfacing with the computer." *Id.* at 451.  The Court concluded: "In sum, a copy of Windows, not Windows in the abstract qualifies as a 'component' under § 271(f)." *Id.* at 451-52.

Here, Defendant contends that Plaintiff's allegation is that "[Defendant] 'provides from the United States data files that include unique object numbers,'" and "these numbers are 'components' supplied from the United States which are 'combined' with RFID tags." Def.'s Mot. J. 3, ECF No. 115 ((citing Second Am. Compl. ¶¶ 42-44, ECF No. 112)).  Defendant agrees that data files are "components" under 35 U.S.C. § 271(f). *Id.* at 6; Pl.'s Resp. 6-9, ECF No. 118; *Ormco Corp. v. Align Technology, Inc.*, 609 F.Supp.2d 1057, 1072 (C.D.Cal. 2009) ("Under the plain meaning definition of the term 'component' adopted by the Court in *Microsoft*, the Court finds that the ADF file is a component of the patented claims at issue.").  However, Defendant contends that Plaintiff "fails to allege that the data file, which is the only 'component' [Defendant] 'supplies' from the U.S., is combined with RFID transponders." Def.'s Mot. J. 6, ECF No. 115.  Defendant claims that "[Plaintiff]'s claim is entirely focused on the numbers, not the data file." *Id.*  Defendant relies on *Microsoft* and reasons: because "a number abstracted from

its tangible expression is without physical embodiment," "[i]t is information: an idea, not a 'component' amenable to 'combination.'" *Id.* (citing *Microsoft*, 550 U.S. at 449).

As an initial observation, Defendant mis-characterizes Plaintiff's allegations.  Contrary to Defendant's suggestion, Plaintiff does not allege that "these numbers are 'components' supplied from the United States …" *See* Second Am. Compl. ¶¶ 42-44, ECF No. 112.  Instead, Plaintiff alleges that Defendant "*provides* from the United States *data files* that *include unique object numbers*" and "[t]he unique object numbers are provided with the intent that they be combined … to make infringing RFID tags and labels." *Id.* ¶ 42 (emphasis added).

Furthermore, the Supreme Court held that the master disk containing the otherwise abstract Windows software is a "component" under § 271(f). *Microsoft*, 550 U.S. at 451-52.  The *Ormco* court also affirmatively held that a data file containing information is a "component" under § 271(f). *Ormco*, 609 F.Supp.2d at 1071-72.  Here, like the master disk containing Windows software in *Microsoft*, Plaintiff alleges that the data files contain the unique object numbers. Second Am. Compl ¶ 42, ECF No. 112.  Defendant concedes that the data files are "components" under § 271(f) and that it supplied the data files to foreign factories or service bureaus. Def.'s Mot. J. 6, ECF No. 115.  As the Supreme Court stated, "the very components supplied from the United States … trigger § 271(f) liability when combined abroad to form the patented invention at issue." *Microsoft*, 550 U.S. at 453.  Therefore, the data files in this case – the very components supplied from the United States – trigger § 271(f) liability when combined abroad to form the '967 Patent.  Thus, the question is whether the data files were *combined* abroad to form the '967 Patent. *See id.*

"[T]he term combination 'encompasses not only a combination of mechanical elements but also a combination of substances in a composition claim or steps in a process claim." *Ormco*,

609 F.Supp.2d at 1073 (citing *Black's Law Dictionary* 260 (1999)). The *Ormco* court held that the combination is present when it is undisputed that the file at issue was combined with other steps in the process. *Id.* Here, Plaintiff alleges that "[t]he unique object numbers are especially made or especially adapted for use in accordance with the inventions claimed in the '967 Patent" and "each *data file* comprising the unique object numbers *is* intended for use and used by [sic] *only to commission RFID tags and labels*." Second Am. Compl. ¶ 43, ECF No. 112 (emphasis added). Furthermore, Plaintiff alleges that Defendant provided the unique object numbers to foreign locations "with the intent that they be combined with uncommissioned RFID tags and labels to make infringing RFID tags and labels." *Id.* ¶ 42. Reading these allegations in combination, the Court finds that Plaintiff sufficiently alleges that the data files are combined with RFID transponders abroad.

For these reasons, Defendant's argument that Plaintiff fails to allege "components" under § 271(f) is unavailing.

### 2. The "combination" element under 35 U.S.C. § 271(f)

On the issue of "combination," Defendant explains that it supplies numbers from the United States in decimal form; however, binary form is required in order to encode the numbers onto RFID tags. Def.'s Mot. J. 6, ECF No. 115 (citing Answer ¶ 42, ECF No. 114). "These binary copies are made in the foreign factory or service bureau[.]" *Id.* Defendant then suggests: "Under *Microsoft v. AT&T*, there can be no infringement under 271(f) because the 'components' which are combined with RFID tags are not supplied from the U.S., but rather are created in the foreign factories or service bureaus." *Id.* at 6-7.

A complaint survives a motion to dismiss and a motion for judgment on the pleadings when it alleges "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550

U.S. at 570; *Dworkin*, 867 F.2d at 1192.  Here, Plaintiff alleges that Defendant provides from the United States data files which are intended for use and used only to commission RFID tags and labels. Second Am. Compl. ¶¶ 42-43, ECF No. 112.  Accepting the allegation as true, Plaintiff has stated a claim for relief under § 271(f) that is plausible on its face. *See Ashcroft*, 556 U.S. at 678.  Defendant's arguments based on its factual dispute of Plaintiff's claim are inappropriate for a motion for judgment on the pleadings.

Even if the Court accepts Defendant's facts as true, Defendant's arguments fail as a matter of law.  In *Microsoft*, the Supreme Court found that "the copies of Windows actually installed on the foreign computers were not themselves supplied from the United States.  Indeed, those copies did not exist until they were generated by third parties outside the United States." *Microsoft*, 550 U.S. at 453.  The court in *Ormco* relied on *Microsoft* and stated:

> [T]he [Supreme] Court held that the supply of a master disk containing source code was not the supply of a component, since the source code was copied from the master disk and these copies were later installed onto other foreign computers. The Supreme Court held that ''replication abroad of a master dispatched from the United States'' failed to meet the ''supplied from the United States'' requirement. Here, Align [defendant] itself provides the copy of the original ADF file to the Costa Rican computer server, and this copy is used by the individual computer running the ToothShaper program. *If Align supplied a copy of the file to Costa Rica, it is irrelevant what Align did with the original.*

*Ormco*, 609 F.Supp.2d at 1072 (emphasis added).  Like the defendant Align in *Ormco*, here Defendant itself supplied the data files to foreign factories and service bureaus, who then used the data files to encode onto RFID tags. Def.'s Mot. J. 6, ECF No. 115.  Therefore, it is irrelevant whether the numbers in decimal form in the data files were copied into binary form. *See Ormco*, 609 F.Supp.2d at 1072.  Plaintiff has sufficiently alleged the "combination" element under § 271(f).

For the reasons stated above, Defendant's Motion for Judgment on the Pleadings as to the § 271(f) claim is denied.

## CONCLUSION

Defendant's Motion for Judgment on the Pleadings as to Plaintiff's claim under 35 U.S.C. § 271(f) (ECF No. 115) is DENIED.

DATED this 30th day of April 2020.

s/ Mustafa T. Kasubhai
MUSTAFA T. KASUBHAI
United States Magistrate Judge