UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| ADASA INC.,<br><br>                              Plaintiff,<br><br>v.<br><br><br><br><br><br>AVERY DENNISON CORPORATION,<br><br><br><br>                              Defendant. | Case No.: 6:17-cv-01685-MK<br><br>OPINION AND ORDER<br><br>RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY;<br>PLAINTIFF'S CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT OF NO INVALIDITY |

**KASUBHAI, Magistrate Judge:**

Plaintiff brought this action alleging that Defendant infringed its patent in violation of 35 U.S.C. §§ 271(a), (b), (c), and (f). Second Am. Compl., ECF No. 112.  Both parties consent to jurisdiction by a U.S. Magistrate Judge. ECF No. 29.

Before the Court are Defendant's Motion for Summary Judgment of Invalidity (ECF No. 122) and Plaintiff's Cross Motion for Partial Summary Judgment of No Invalidity (ECF No. 145).  The Court heard oral argument on February 25, 2020. ECF No. 155.  For the reasons set forth below, Defendant's Motion for Summary Judgment of Invalidity (ECF No. 122) is

1 – OPINION AND ORDER

DENIED and Plaintiff's Motion for Partial Summary Judgment of No Invalidity (ECF No. 145) is GRANTED.

## BACKGROUND

### A. General Background

Plaintiff, an Oregon corporation, is the owner of the United States Patent No. 9,798,967 (the " '967 Patent") under the patent law before the America Invents Act ("AIA") became effective in 2013. Am. Compl., Ex. A, the '967 Patent, ECF No. 71-1. The inventor of the '967 Patent is Clarke McAllister ("McAllister"). *Id.*

The letters patent of the '967 Patent shows that the '967 Patent claims priority through a chain of patent applications. *Id.* at 1:6-21. Relevant to the issues here, the '967 Patent claims priority as a continuation of U.S. Patent No. 9,272,805 filed on June 19, 2012, which is a continuation-in-part of U.S. Patent No. 8,228,198 filed on June 21, 2010 ("The '198 Patent" or "2010 Application"), which is a continuation-in-part of the U.S. Patent Application No. 12/124,768, filed on May 21, 2008 ("2008 Application"). *Id.*

In August and September of 2008, McAllister and Plaintiff ADASA worked to incorporate embodiments of his invention into a radio frequency identification ("RFID") encoding system as a project with Walmart, referred to as the "Ad Hoc Mode". Legaard Decl., Ex. E., McAllister Dep. 95:17-24, ECF No. 123-5; *see* Ex. G, Pl.'s Resp. to Def.'s Second Set of Interrogs. 3, ECF No. 123-7. Plaintiff introduced the Ad Hoc feature commercially in February 2009 and sold the encoders and software implementing the Ad Hoc Mode to Walmart on April 20, 2009. *Id.* at Ex. G, 3-4.

Following Plaintiff's filing of this infringement action, Defendant filed a Request for Ex Parte Reexamination of the '967 Patent with the United States Patent and Trademark Office

("USPTO"). Pl.'s Reply, Ex. A 1-2, ECF No. 148-2.  The USPTO issued a Reexamination Certificate on July 30, 2018 concluding that all claims of the '967 Patent are patentable. Am. Compl. Ex. A, 42, Ex Parte Reexamination Certificate, ECF No. 71-1.

**B. The Technology Background of the '967 Patent**

The '967 Patent relates in part to systems for encoded and commissioned wireless RFID devices. Second Am. Compl. ¶ 8, ECF No. 112; Answer, ¶¶ 8, 11, ECF No. 114.  In the RFID industry and particularly for merchandise tracking applications, the memory bank of an RFID tag is encoded with an Electronic Product Code ("EPC"), an identifier for an item in the supply chain to uniquely identify that particular item. Second Am. Compl. ¶ 11, ECF No. 112; Answer ¶ 11, ECF No. 114.  The EPC can be serialized in a format following an EPC tag data standard. Second Am. Compl. ¶ 11, ECF No. 112; Answer ¶ 11, ECF No. 114.  One standard is known as Serialized Global Trade Item Number ("SGTIN"). Second Am. Compl. ¶ 11, ECF No. 112; Answer ¶ 11, ECF No. 114.

Where the SGTIN format is used for item identification, the EPC contains "object class" information and a "serial number." Second Am. Compl. ¶ 12, ECF No. 112; Answer ¶ 12, ECF No. 114.  The "object class" information includes, among other things, a "company prefix," which identifies the brand owner and an "item reference number" which identifies the class of item offered by a brand owner (which generally corresponds to the UPC or SKU of a bar code). Second Am. Compl. ¶ 12, ECF No. 112; Answer ¶ 12, ECF No. 114.  The "object class" section of a SGTIN format uniquely identifies different classes of products sold by a particular brand owner. Second Am. Compl. ¶ 12, ECF No. 112; Answer ¶ 12, ECF No. 114.  The companies or brand owners are responsible for assigning a unique serial number for each item of an object class. Second Am. Compl. ¶ 12, ECF No. 112; Answer ¶ 12, ECF No. 114.  The combination of

3 – OPINION AND ORDER

an object class and a unique serial number provides a unique object number contained in the EPC. Second Am. Compl. ¶ 13, ECF No. 112; Answer ¶ 13, ECF No. 114.

The '967 Patent teaches an RFID transponder or inlay with an RFID integrated circuit chip ("IC chip") having an encoded memory structure that ensures uniqueness with the serial number portion of the code. Am. Compl. Ex. A, the '967 Patent, ECF No. 71-1. Specifically, the '967 Patent teaches an RFID IC chip memory structure delineating a section using the leading bits of the serial number section of the EPC binary encoding – referred to as the "most significant bits" ("MSBs") in the '967 Patent. Am. Compl. Ex. A, the '967 Patent, ECF No. 71-1.

## C. Plaintiff's Claims

Plaintiff alleges that Defendant "makes, encodes, sells, and offers to sell RFID tags and labels for customers that are RFID transponders that comprise a substrate, an antenna, and an RFID IC chip coupled to the antenna." Second Am. Compl. ¶ 22, ECF No. 112. Plaintiff alleges direct infringement of claims 1-6, and 12-15 of the '967 Patent by using the format of the '967 Patent in violation of 35 U.S.C. § 271(a). *Id.* ¶¶ 26-35. Plaintiff also alleges indirect infringement of the '967 Patent in violation of 35 U.S.C. §§ 271(b), (c) and (f). *Id.* ¶¶ 36-41.

## LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a jury verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). In determining a motion for summary judgment, "the judge must view the evidence in the light most favorable to the nonmoving party." *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

# DISCUSSION

Defendant's motion and Plaintiff's cross motion present two issues before the Court. First, whether the 2008 Application discloses the claimed invention in the '967 Patent in order for the '967 Patent to be entitled to the priority date of the 2008 Application. Def.'s Mot. Summ. J. 13-20, ECF No. 122; Pl.'s Cross Mot. Partial Summ. J. 7-25, ECF No. 145.

The second issue is based on Defendant's contention that the '967 Patent cannot claim the priority date of the 2008 Application because the 2008 Application does not disclose certain elements of the claims of the '967 Patent. Def.'s Mot. Summ. J. 13-20, ECF No. 122.  Defendant argues that the "2009 sales of Ad Hoc Mode are invalidating sales under 35 U.S.C. § 102(b) (pre-AIA)." *Id.* at 5, 20.

Plaintiff disagrees and opposes Defendant's position on both issues. Pl.'s Cross Mot. Partial Summ. J. 7-30, ECF No. 145.

## I. Relevant Pre-AIA Patent Law

### A. The "On-Sale Bar" to Patentability

Under 35 U.S.C. § 102(b) (pre-AIA), an inventor must file a patent application disclosing an invention within one year after the first public use or sale of the invention, otherwise the ability to obtain patent protection for that invention is forfeited.  This statutory bar is known as the "on-sale bar." *See Pfaff v. Wells Electronics, Inc.*, 525 U.S. 55, 65 (1998).

### B. Priority Claims and Written Description Requirement

When an inventor applies for a patent, the inventor is entitled to a "priority" date, the date when the inventor is first given credit for inventing the invention based on the date the patent application is filed, subject to a few exceptions. 35 U.S.C. § 100(i); 35 U.S.C. § 120.  Section 120 of the patent law provides one exception.  Specifically, if an earlier filed patent application

discloses the entire invention and is pending, additional related patent applications that add or modify the portions describing the invention are entitled to claim the priority of the earlier patent application. 35 U.S.C. § 120. That is, the "effective filing date" of the later filed patent applications is the filing date of the earlier filed patent application. *Id.*; 35 U.S.C. § 100(i).

In order to claim the priority of the earlier patent application, the claims in the later filed patent application must be supported by the written description of the earlier patent application. 35 U.S.C. § 112, first para.

## II. Issues Before the Court

### A. Whether the 2008 Application Discloses the Claimed Invention in the '967 Patent

"[T]he hallmark of written description is disclosure." *Ariad Pharm., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010). "[T]he test for sufficiency [of written description] is whether the disclosure of the application relied upon reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date." *Id.* The test of whether the inventor had "possession as shown in the disclosure" "requires an objective inquiry into the four corners of the specification from the perspective of a person of ordinary skill in the art." *Id.* "Compliance with the written description requirement is a question of fact but is amenable to summary judgment in cases where no reasonable fact finder could return a verdict for the non-moving party." *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1307 (Fed. Cir. 2008).

Claim 1 of the '967 Patent encompasses the disputed claim elements.[1] *See* Def.'s Mot. Summ. J. 13-20, ECF No. 122; *see also* Pl.'s Cross Mot. Summ. J. 8, ECF No. 145. The Court

---

[1] Claim 13 also includes these elements, as well as their respective dependent claims. *See* Am. Compl., Ex. A, the '967 Patent Reexam. Cert., 2:1-18, ECF No. 71-1. The Court only discusses the elements in Claim 1 because the parties agree that the differences between Claim 1 and Claim 13 are irrelevant to the analysis at issue. Pl.'s Cross Mot. Summ. J. 8, ECF No. 145; *see* Def.'s Resp., ECF No. 146.

6 – OPINION AND ORDER

adopts Plaintiff's method of identifying the claim elements of Claim 1 for the ease of references and discussion. Claim 1 states:

| Claim Element | Claim 1 |
| --- | --- |
| Preamble: | 1. An RFID transponder comprising: |
| Element A: | a substrate; |
| Element B: | an antenna structure formed on the substrate; and |
| Element C: | an RFID integrated circuit chip which is electrically coupled to the antenna structure, |
| Element D: | wherein the RFID integrated circuit chip is encoded with a unique object number, the unique object number comprising an object class information space and a unique serial number space, |
| Element E: | wherein the unique serial number space is encoded with one serial number instance from an allocated block of serial numbers, *the allocated block being assigned a limited number of most significant bits*, |
| Element F: | wherein the unique serial number space comprises the limited number of most significant bits *uniquely corresponding* to the limited number of most significant bits of the allocated block and of *remaining bits of lesser significance* that together comprise the one serial number instance. |

Am. Compl., Ex. A, the '967 Patent Reexam. Cert., 1:21-39, ECF No. 71-1 (emphasis added for the disputed portions).

Defendant argues that the following portions in Element E and Element F of the 2008 Application fail to disclose: (1) "the allocated block being assigned a limited number of most significant bits," (2) "uniquely corresponding," (3) the requirement that the allocated block be assigned a limited number of most significant bits, and (4) "remaining bits of lesser significance." Def.'s Mot. Summ. J. 15-17, ECF No. 122. Defendant does not challenge other parts of Claims 1 and 13 and the remaining claims in the '967 Patent. *See generally* Def.'s Mot. Summ. J., ECF No. 122; *see generally* Def.'s Resp., ECF No. 146 .

Plaintiff claims that the 2008 Application discloses every claim element in Claim 1, including the portions identified by Defendant. Pl.'s Resp. 7-27, ECF No. 130; Pl.'s Cross Mot.

7 – OPINION AND ORDER

Summ. J. 10-25, ECF No. 145. Plaintiff supports its position with the declaration of Dr. Engels, Ph.D., an expert in RFID technology. Engels Decl., ECF No. 130-4. "In light of [his] education, background, and extensive professional and practical experience with RFID technology," Dr. Engels considers himself "to be one skilled in the art as it pertains to the subject matter of the invention taught in the '967 Patent[.]" *Id.* ¶ 11. Dr. Engels declares that he has "analyzed the claims of the '967 Patent compared with the disclosure contained within the [2008] Application[2], including the written specification, examples, and figures contained therein, to determine whether there is sufficient written support for each limitation of the … [c]laims [of] the '967 Patent to be entitled to priority to the [2008 Application]." *Id.* ¶ 12. Based on his analysis, Dr. Engels concludes that the claims of the '967 Patent are adequately supported by the disclosure of the 2008 Application. *Id.* ¶ 15.

It is well established that a patent is presumed valid. *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1303 (Fed. Cir. 2008). "[A] challenger has the burden of persuasion to show by clear and convincing evidence" that a patent is not entitled to priority. *Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1329 (Fed. Cir. 2008). Although "the patentee has the burden of going forward with evidence and argument to the contrary[,]" the "ultimate burden never shifts." *Id.* at 1328-29.

Here, in response to Defendant's motion challenging the priority of the '967 Patent, Plaintiff offers Dr. Engels' opinion and argument to the contrary. *See* Pl.'s Resp., ECF No. 130. Defendant challenges Dr. Engels' opinion, claiming that Dr. Engels is not an ordinary artisan in the pertinent field because "his education and accomplishments clearly far surpasses that of the ordinary artisan in this field." Def.'s Reply 4, ECF No. 137; Def.'s Resp. 4, ECF No. 146.

---

[2] Dr. Engels' declaration references the 2008 Application as the '768 Application.

8 – OPINION AND ORDER

The Federal Circuit has expressly rejected this argument made by Defendant. The Federal Circuit held: "Because the person having ordinary skill in the art is a 'theoretical construct' and is 'not descriptive of some particular individual,' 'a person of *exceptional* skill in the art' should not be disqualified because he or she is "not ordinary enough." *Norgren Inc. v. Int'l Trade Comm'n*, 699 F.3d 1317, 1325 (Fed. Cir. 2012) (citation omitted; emphasis supplied). Defendant agrees that Dr. Engels is skilled in the art. Def.'s Reply 4, ECF No. 137; Def.'s Resp. 4, ECF No. 146. Defendant also does not raise any other argument to challenge Dr. Engels' qualification as an ordinary artisan. *See* Def.'s Reply, ECF No. 137; *see also* Def.'s Resp., ECF No. 146. Thus, the Court follows the Federal Circuit and exercises its discretion to find that Dr. Engels is a person of ordinary skill in the art and "to credit his testimony." *See Norgren Inc.*, 699 F.3d at 1325.

The written description must clearly allow persons of ordinary skill in the art to recognize that the inventor invented what is claimed. *Ariad Pharm., Inc.*, 598 F.3d at 1351 (quotation marks omitted). The Court next examines the disputed portions in Elements E and F in turn to determine whether the 2008 Application clearly allows a person of ordinary skill in the art to recognize that McAllister invented the claimed invention in the '967 Patent.

(1) "the allocated block being assigned a limited number of most significant bits"

*a. The 2008 Application and the Ad Hoc Mode*

Defendant first argues that the 2008 Application does not disclose the Ad Hoc Mode, which is the claimed invention in the '967 Patent. Def.'s Mot. Summ. J. 15, ECF No. 122. Defendant notes that the 2008 Application discloses that the MSBs were used to provide "large blocks of pre-authorized blocks of object class serial numbers." 2008 Application [0049], ECF No. 130-3. Defendant also notes that in the Ad Hoc Mode, "[t]he MSBs could be assigned to an

9 – OPINION AND ORDER

encoder to create a block of serial numbers." Pl.'s Am. Resp. Def.'s Interrogs. 12, ECF No. 123-4.  Therefore, Defendant contends that the 2008 Application discloses the use of MSBs to provide "blocks of blocks" of serial numbers and does not disclose "a single block of serial numbers" as practiced in the Ad Hoc Mode. Def.'s Mot. Summ. J. 15, ECF No. 122.

Plaintiff claims that the Ad Hoc Mode is not the claimed invention of the '967 Patent, but merely an embodiment of a particular aspect of the invention. McAllister Decl. ¶¶ 6-7, ECF No. 130-8; Engels Decl. ¶ 62, ECF No. 130-4.  Specifically, the "Ad Hoc Mode was a mode of operation of ADASA's PAD3500 encoder." Engels Decl. ¶ 63, ECF No. 130-4; McAllister Decl. ¶¶ 6-7, ECF No. 130-8.  Defendant does not refute that the Ad Hoc Mode was merely an embodiment of the '967 Patent. *See generally*, Def.'s Reply, ECF No. 137.

Because at issue is whether the claimed invention in the '967 Patent, not the Ad Hoc Mode, is disclosed by the 2008 Application, the Court does not address the issue related to the Ad Hoc Mode.[3]  The Court compares the written description of the 2008 Application with the claims in the '967 Patent.

    b. "blocks of blocks" of serial numbers v. "blocks" of serial numbers

According to Plaintiff, the following disclosure from the 2008 Application supports Element E:

> *Authorizations for one or more classes of objects are preferably loaded into* encoder 15, 30, or 60, where such *authorizations include* data fields such as manufacturer ID, item reference, manufacturer code lengths, filter values (that designate packaging levels such as item, case, pallet, etc.), *serial number starting point for a block*, and other predetermined parameters.
>
> A preferred embodiment for quasi-autonomous transponder encoding authority is realized when *large pre-authorized blocks of serial numbers* are made available to encoder 15 or 50 to *utilize on object classes as objects of a class are presented for*

---

[3] In its motion, Defendant makes the same argument based on the Ad Hoc Mode for "uniquely corresponding" and "assigned to an allocated block" in Element F. Def.'s Mot. 16-17, ECF No. 122.  Because the analysis is the same, the Court does not address this issue separately.

10 – OPINION AND ORDER

> *tagging*. A preferred method of providing large blocks of pre-authorized blocks of object class serial numbers is to *subdivide the entire* object class *serial number space into sectors that are defined by a limited number of MSB's* (Most Significant Bits) *of the serial number field*."

Engels Decl. ¶¶ 43-44, ECF No. 130-4 (citing 2008 Application [0015], [0049], ECF No. 130-3) (emphasis supplied in Engels Declaration).

Defendant contends that the last sentence of the above disclosure does not disclose a method of providing blocks of serial numbers; rather, it discloses a method of providing "blocks of blocks" of serial numbers. Def.'s Mot. Summ. J. 15, ECF No. 122; Engels Decl. ¶ 45, ECF No. 130-4. Defendant supports its argument with the testimony of Charles B. Williams, whom Plaintiff acknowledges as having "at least ordinary skill in the RFID field." Def.'s Reply 7, ECF No. 137; Pl.'s Resp. 8, ECF No. 19. According to Defendant, when Mr. Williams was asked what "blocks of blocks" is, he answered "I have no idea what they're trying to say in that sentence." Williams Dep. 48:22-49:3, ECF No. 139-4[4].

Plaintiff argues that Defendant's reliance on Mr. Williams' testimony is misplaced. Pl.'s Reply 5-6, ECF No. 148. Specifically, "Mr. Williams was not apprised of the requirements of 35 U.S.C. § 112 or the test for determining the sufficiency of a patent disclosure[.]" *Id.* at 6. Additionally, Mr. Williams "did not review the full disclosure of the 2008 Application" and "was shown a portion of one sentence from the 2008 Application and asked what a 'block of block' is." *Id.* The record before the Court does not show that Defendant counters this argument. Nor does Defendant dispute Plaintiff's contention during oral argument. The Court finds that Mr. Williams' testimony was not based on his review of the full disclosure of the 2008 Application.

---

[4] Defendant cites to but does not submit to the Court page 49 of the deposition transcript of Charles B. Williams. The Court relies on the citation provided in Defendant's Reply 10, ECF No. 137.

Defendant also argues that in the 2010 Application (*i.e.*, the '198 Patent), Plaintiff revised the sentence to read: "[a] preferred method of providing pre-authorized blocks of object class serial numbers is to subdivide the entire object class serial number space into sectors that are defined by a limited number of MSB's (Most Significant Bits) of the serial number field." The '198 Patent, 18:34-38, ECF No. 130-14. Defendant claims that "[t]his revision is a clear admission that (1) 'blocks' of serial numbers and 'blocks of blocks' of serial numbers are not the same thing, and (2) 'blocks of blocks' of serial numbers does not describe the claimed invention" in the '967 Patent. Def.'s Reply 9, ECF No. 137.

The disclosure of the 2010 Application would be relevant if the issue is whether the 2010 Application discloses the claimed invention in the '967 Patent. However, that is not the issue before the Court. Rather, as stated above under the discussion concerning the Ad Hoc Mode, the issue is whether the *2008* Application discloses the claimed invention in the '967 Patent. Therefore, the Court does not accept Defendant's framing of the issue.

Plaintiff's argument is based on Dr. Engels' testimony. Dr. Engels testified that the last sentence in the above disclosure "refers to 'large blocks' that are taken from the pre-authorized blocks that are created from the object class serial numbers." Engels Decl. ¶ 45, ECF No. 130-4. He explains:

> In other words, all of the serial numbers for a particular object class are divided up into pre-authorized blocks of serial numbers, and some or all of the blocks may be large.
>
> The creation of large pre-authorized blocks is effected by the method in which the serial numbers are partitioned into sectors, with the leading bits of a sector being the assigned sequence of most significant bits and the trailing bits of a sector being the remaining bits of lesser significance that complete the serial number.

12 – OPINION AND ORDER

*Id.* ¶¶ 45-46. "The concept of a block of serial numbers, with each serial number in the block having the same set of most significant bits allocated to the block, is straightforwardly understood from this disclosure in the [2008] Application." *Id.* ¶ 49.

<u>(2) "uniquely corresponding," "remaining bits of lesser significance" and assigned to an allocated block</u>

Element F of the '967 Patent requires: "wherein the unique serial number space comprises the limited number of most significant bits *uniquely corresponding* to the limited number of most significant bits of the allocated block and of *remaining bits of lesser significant* that together comprise the one serial number instance." Am. Compl., Ex. A, the '967 Patent Reexam. Cert., 1:21-39, ECF No. 71-1 (emphasis added for the disputed portions). As provided above, "the allocated block being assigned a limited number of most significant bits" is part of Element E. *Supra*, III.A.

As noted in footnote 3, the Court does not address Defendant's Ad Hoc argument. Defendant, however, makes an alternative argument in its reply and in its response to Plaintiff's motion. Defendant claims that the 2008 Application does not include the language Plaintiff has used in its argument to describe the claimed "uniquely corresponding" relationship between the most significant bits of the encoded serial number and the allocated block. Def.'s Resp. 11, ECF No. 146. Specifically, the language of "share the same," "matching," "direct correlation," "uniquely correspond," "matching uniquely," or "one-to-one-relationship." *Id*. Defendant also relies on this argument and contends that the 2008 Application similarly does not disclose the limitations of "assigned to an allocated block" and "remaining bits of lesser significance." *Id.* at 12.

Contrary to Defendant's argument, the Ninth Circuit has held: "*ipsis verbis* disclosure is not necessary to satisfy the written description requirement of section 112." *Fujikawa v.*

13 – OPINION AND ORDER

*Wattanasin*, 93 F.3d 1559, 1570 (Fed. Cir. 1996).  Therefore, the question is not whether the disclosure used the same words in the written description.  "Instead, the disclosure need only reasonably convey to persons skilled in the art that the inventor had possession of the subject matter in question." *Id.*

In addition to the above-cited 2008 Application disclosure supporting Element E, Plaintiff represents that the following disclosure from the 2008 Application supports Element F:

> A preferred embodiment for quasi-autonomous transponder encoding authority is realized when large pre-authorized blocks of serial numbers are made available to encoder 15 or 50 to utilize on object classes as objects of a class are presented for tagging. *A preferred method of providing large blocks of pre-authorized blocks of object class serial numbers is to subdivide the entire object class serial number space into sectors that are defined by a limited number of MSB's (Most Significant Bits) of the serial number field.* In a preferred embodiment *serial number block sizes are sufficient to operate encoder 15 or 50 for extended periods of time without any further external authorization steps*. For example autonomous operation for a week or more is possible with sufficiently large block sizes. Block allocations are preferably assigned with reference to how many encoders 15 or 50 are *authorized to operate within the facilities of the owner of certain object class numbers*.
>
> In a preferred embodiment, a block is allocated and managed using three numbers: *a starting number that is the first serialized instance of the block, a block size which represents the total number of instances in the block, and a counter or index that represents how much of the block has been used during an encoding process*. Using these three numbers and an optional block lock bit, a simple database of object class authorizations can be built.
>
> Authorizations for one or more classes of objects are preferably loaded into encoder 15, 30, or 60, where such authorizations include data fields such as manufacturer ID, item reference, manufacturer code lengths, filter values (that designate packaging levels such as item, case, pallet, etc.), *serial number starting point for a block*, and other pre-determined parameters. Such information is preferably loaded into the memory of the encoder in advance of tag commissioning operations. Thus if loaded with information for more than one object class, encoder 15, 30, or 60 does not have sufficient information to proceed with encoding a transponder until a single object class is selected for the present RFID transponder to receive a number from.

14 – OPINION AND ORDER

Engels Decl. ¶ 52, ECF No. 130-4 (citing the 2008 Application, [0049], [0051], [0015] ECF No. 130-3) (emphasis supplied in Engels Declaration).

At claim construction, the Court has held that "the phrase 'uniquely corresponding' is construed as having its plain and ordinary meaning as [P]laintiff Adasa suggests." Op. and Order 9, ECF No. 68. The Court construed "being assigned a limited number of most significant bits" as "includes a limited, predefined sequence of higher order bits at the leading ends." *Id.* at 3. Additionally, the Court construed "remaining bits of lesser significance" as "the remaining lower order bits at the trailing end." *Id.*

> Dr. Engels testifies:
>
> 48. *The existence of least significant bits in the serial number is implicit from the disclosure that the serial number has a set of most significant bits.* If the serial number has a predefined set of most significance bits at its leading end (read from higher order bits at the left to lower order bits at the right), the remaining bits of the serial number would intrinsically be the lower orders bits which follow to complete the serial number.
>
> 53. The [2008] Application discloses that a block of serial numbers is created in which all of the serial numbers have the same pre-assigned sequence of most significant bits. As a result, if a serial number instance is selected from this block of serial numbers which all have the same most significant bits, the selected serial number instance must necessarily have the "*matching*" set of most significant bits that was *assigned* to all of the serial numbers in that allocated block. …
>
> 54. … The manner disclosed by the [2008] Application to ensure uniqueness of the serial numbers for a particular object class is to partition the bits of the serial number space into two parts – the most significant bits and the remaining least significant bits – then to allocate the blocks of serial numbers (where all serial numbers within a block have the same MSB value) to be assigned to unique objects. …

Engels Decl. ¶¶ 48, 53-54, ECF No. 130-4 (emphasis added).

Based on his chart comparison and analysis, Dr. Engels declares that "the [c]laims of the '967 Patent are adequately supported by the disclosure of the [2008] Application[.]" *Id.* ¶ 15. Because Dr. Engels, an artisan with ordinary skill in the field, is able to recognize that the 2008

Application discloses the claimed invention in the '967 Patent, including Element E and Element F, and Defendant has not met its burden to show the contrary by clear and convincing evidence, the '967 Patent is entitled to the priority date of the 2008 Application. *See Tech. Licensing Corp.*, 545 F.3d at 1329.

### B. Whether the Ad Hoc Mode Sale Invalidates the '967 Patent Under § 102(b)

Because the Court finds that the 2008 Application discloses the claimed invention in the '967 Patent, the later-occurred Ad Hoc Mode sale cannot create an on-sale bar to the '967 Patent.

For the above reasons, Defendant's Motion for Summary Judgment of Invalidity is DENIED. Because a patent is presumed valid and Defendant has not met the burden of persuasion to show by clear and convincing evidence that the '967 Patent is not entitled to the priority of the 2008 Application, Plaintiff's Cross Motion for Partial Summary Judgment of No Invalidity is GRANTED. *See PowerOasis, Inc.*, 522 F.3d at 1303. 1329.

## CONCLUSION

Defendant's Motion for Summary Judgment of Invalidity (ECF No. 122) is DENIED. Plaintiff's Motion for Partial Summary Judgment of No Invalidity (ECF No. 145) is GRANTED.

DATED this 30th day of April 2020.

s/ Mustafa T. Kasubhai
MUSTAFA T. KASUBHAI
United States Magistrate Judge