UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

ADASA, INC.,

                      Plaintiff,

vs.

AVERY DENNISON CORPORATION,

                      Defendant.

Case No. 6:17-cv-01685-MK

**OPINION AND ORDER**

**KASUBHAI,** United States Magistrate Judge:

Plaintiff Adasa Incorporated brought this patent action against Defendant Avery Dennison Corporation alleging infringement of U.S. Patent No. 9,798,967 ("the '967 Patent"). *See* Second Amend. Compl., ECF No. 112. In September 2020, the Court denied Defendant's motion for summary judgment on non-infringement and invalidity under 35 U.S.C. §§ 101 and 103 and granted, in part, Plaintiff's motion for summary judgment. *See* September 14, 2020 Op. and Order, ECF No. 305 ("September 2020 O&O"); *see also Adasa Inc. v. Avery Dennison Corp.*, No. 6:17-cv-01685-MK, 2020 WL 5518184, at *1 (D. Or. Sept. 14, 2020). In May 2021, after multiple delays due to public health concerns stemming from the Covid-19 pandemic, the

Court held a five-day trial. The jury returned a verdict finding Defendant's Commissioning Authority tags literally infringed the '967 patent, infringed *via* the doctrine of equivalence, and awarded Plaintiff approximately $26,640,876 in damages. *See* Jury Verdict, ECF No. 331. After the parties filed several post-trial motions, the Court heard two days of argument and issued an oral ruling on the motions reflected in an October 10, 2021 Minute Order. ECF No. 421. This opinion supplements the Court's previous oral ruling.

Given the extensive briefing and jury trial, the Court and parties are well familiar with the factual and procedural history, contested issues of law, and evidentiary record in this case. As a result, this Opinion limits its discussion to only information necessary to resolve the pending matters before the Court, which include: Plaintiff's Bill of Costs (ECF No. 350); Plaintiff's Motion for Attorney Fees (ECF No. 351); Plaintiff's Motion for Pre- and Post-Judgment Interest (ECF No. 352); Plaintiff's Motion for Ongoing Royalties (ECF No. 353); Defendant's Motion for Judgment as a Matter of Law or New Trial (ECF No. 362); and Plaintiff's Motion for Sanctions (ECF No. 366).

## DISCUSSION

### I.    Bill of Costs (ECF No. 350)

Plaintiff seeks costs in the amount of $56,499.38. ECF No. 350. Defendant timely objected and argues the Court should reduce the amount. ECF No. 363. For the reasons explained below, the Court reduces Plaintiff's Bill of Costs.

Federal Rule of Civil Procedure ("Rule") 54(d)(1) provides: "Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." Rule 54(d) creates a presumption in favor of awarding costs to a

prevailing party—*i.e.*, "the losing party must show why costs should not be awarded" in any particular case. *Save Our Valley v. Sound Transit*, 335 F.3d 932, 944–45 (9th Cir. 2003).

Title 28 § 1920 of the United States Code allows a federal court to tax specific items as costs against a losing party pursuant to Rule 54(d)(1). Section 1920 provides:

> A judge or clerk of any court of the United States may tax as costs the following:
>
> (1) Fees of the clerk and marshal;
>
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
>
> (3) Fees and disbursements for printing and witnesses;
>
> (4) Fees for exemplification and costs of making copies of any materials where the copies are necessarily obtained for use in the case;
>
> (5) Docket fees under section 1923 of this title;
>
> (6) Compensation for court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

The court must limit an award of costs to those defined in 28 U.S.C. § 1920 unless otherwise provided for by statute. *Grove v. Wells Fargo Fin. Ca., Inc.*, 606 F.3d 577, 579–80 (9th Cir. 2010). Although Rule 54 creates a presumption in favor of awarding costs to the prevailing party, the rule also "vests in the district court discretion to refuse to award costs" in appropriate circumstances. *Ass'n of Mex.-Am. Ed1tcators v. California,* 231 F.3d 572, 591 (9th Cir. 2000). This discretion is not unlimited and a district court must provide reasons for its decision. *Id.*

The Ninth Circuit has explained that:

> [a]ppropriate reasons for denying costs include: (1) the substantial public importance of the case, (2) the closeness and difficulty of the issues in the case, (3) the chilling effect on future similar

actions, (4) the plaintiffs limited financial resources, and (5) the
economic disparity between the parties.

*Escriba v. Foster Po1tltry Farms, Inc.,* 743 F.3d 1236, 1247-48 (9th Cir. 2014). "This is not an

exhaustive list of good reasons for declining to award costs, but rather a starting point for

analysis." *Id.* at 1248 (quotation marks omitted).

Defendant objects to Plaintiff's bill of costs on four specific grounds: (1) the recovery of

*pro hac vice* application fees; (2) Plaintiff's use of a private process server; (3) costs relating to

fees for printed and electronically recorded transcripts; and (4) costs relating to exemplification

and making copies.

After reviewing the parties' submissions and relevant authority, the Court concludes that

Plaintiff's request shall only be reduced by the amount related to fees for the late payment of

invoices, but otherwise awarded. *See Healthport Corp. v. Tanita Corp. of Am.*, No. 06-cv-00419-

PK, 2008 WL 11513092, at *3 (D. Or. July 24, 2008) (concluding "that *pro hac vice* fees may be

taxable as costs"); *Skedco, Inc. v. Strategic Operations, Inc.*, No. 3:13-CV-00968-HZ, 2016 WL

8678445, at *13 (D. Or. Apr. 1, 2016) (permitting "fees for service of the summons and

subpoenas") (citing 28 U.S.C. § 1920(1)); *see also Alflex Corp. v. Underwriters Lab., Inc.*, 914

F.2d 175, 177 (9th Cir. 1990) (per curiam) ("Now that the Marshal is no longer involved as often

in the serving of summonses and subpoenas, the cost of private process servers should be taxable

under 28 USC § 1920(1)."); *Davico v. Glaxosmithkline Pharms.*, No. 05-cv-06052-TC, 2008 WL

624049, at *1 (D. Or. Jan. 23, 2008) ("[f]ees incurred in obtaining deposition transcripts may be

recovered"), *adopted*, 2008 WL 627412 (D. Or. Mar. 6, 2008); *Adidas Am., Inc. v. Payless

Shoesource, Inc.*, No. 01-cv-01655-KI, 2009 WL 302246, at *4 (D. Or. Feb. 9, 2009) (allowing

approximately $267,000 in printing and copying costs and observing that "[c]opying costs for

documents produced in discovery, as well as the court's copies of documents filed to support

motions, are held to be reasonably necessary for use in a case and thus are routinely awarded in this court").

Plaintiff is AWARDED costs in the amount of $55,424.70. The amount Plaintiff requested is reduced by the amount Plaintiff incurred for late fee payments of outstanding invoices.

## II.    Attorney Fees (ECF No. 351)

Plaintiff moves for an award of attorney fees in this matter in the amount of $2,250,000. *See* ECF No. 351. Plaintiff moved the court for additional attorney fees incurred post-trial bringing its total requested attorney fees to $2,250,000. Defendant timely opposes the motion and argues the relevant statute does not permit a fee award "merely for winning" and Defendant defending itself. ECF No. 361 at 5. For the reasons explained below, Plaintiff's motion is granted.

Title 35 § 285 of the United States Code permits an award of reasonable attorney fees to a prevailing party in "exceptional cases." *See* 35 U.S.C. § 285. The Supreme Courts has explained that an exceptional case is one that, considering the totality of the circumstances, "stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.* 572 U.S. 545, 554 (2014). While "there is no precise rule or formula" for considering the totality of the circumstances, a district court may weigh such factors as "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 554 n.6. "Section 285 demands a simple discretionary inquiry; it imposes no specific evidentiary

burden, much less such a high one," thus a litigant only must show that it is entitled to fees under Section 285 by a preponderance of the evidence. *Id*. at 557–58.

Under relevant precedent, there are generally two categories that the district court should look to when considering a fee award: (1) litigation misconduct and (2) advancing substantively weak or repetitive arguments throughout the course of trial. More specifically, "misconduct during litigation" alone can make a case exceptional. *Beckman Instr. Inc. v. LKB Produkter AB*, 892 F.2d 1547, 1551 (Fed. Cir. 1989). Additionally, "courts have awarded attorneys' fees under Section 285 where a party advances arguments that are particularly weak and lack support in the record or seek only to re-litigate issues the court has already decided." *Enovsys LLC v. AT&T Mobility LLC*, 2016 WL 3460794, at *6 (C.D. Cal. Feb. 16, 2016). It is the "substantive strength," not the "correctness or eventual success," of a party's position that is relevant to the determination that a case qualifies as "exceptional." *SFA Sys., LLC v. Newegg Inc.*, 793 F.3d 1344, 1348 (Fed. Cir. 2015) (also finding that "[a] district court may declare a case exceptional based on unreasonable and vexatious litigation tactics, even where it finds the legal theories advanced not objectively baseless"). Ultimately, the decision of whether to award attorney fees is left to the district court's sound discretion. *Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 572 U.S. 559, 563 (2014).

Viewing the totality of Defendant's conduct throughout the course of this litigation, the Court finds that this is an exceptional case. Plaintiff is therefore entitled to an attorney fee award for several reasons. The Court explained that it was inclined to consider an award of attorney fees, in part, as a result of Defendant's eleventh-hour attempt to inject three "supplemental" expert reports on the eve of trial. Throughout the jury trial, Defendant repeatedly flouted the Court's *limine* rulings.

Defendants also continued to relitigate issues the Court previously rejected such as Defendant's assertion of foreign infringement of the '967 patent. *See San Diego Comic Convention v. Dan Farr Prods.*, 2019 WL 1599188, at *3 (S.D. Cal. Apr. 15, 2019) ("Defendant also repeatedly attempted to relitigate issues the Court has already decided.") *aff'd in part*, *vacated in part*, *remanded*, 807 F. App'x 674 (9th Cir. 2020) (affirming district court's "deeming [the] case 'exceptional' and granting attorney fees where the district judge highlighted the defendants' "failure to comply with court rules, persistent desire to re-litigate issues already decided, advocacy that veered into 'gamesmanship,' and unreasonable responses to the litigation").

Defendant's conduct regarding discovery also weighs in favor of finding this case to be exceptional. On multiple occasions Defendant failed to comply with basic discovery obligations. *See Drop Stop Ltd. Liab. Co. v. Zhu*, 757 F. App'x 994, 998 (Fed. Cir. 2019) (affirming award of attorneys' fees for plaintiff when defendant committed numerous instances of discovery misconduct which the district court found "[t]aken individually, the pieces of the story might not make Defendants' conduct look exceptional. The whole tale, however, leads to a different conclusion."); *Integrated Tech. Corp. v. Rudolph Techs., Inc.*, 629 F. App'x 972, 974 (Fed. Cir. 2015) (affirming award of attorneys' fees for plaintiff when defendant's litigation conduct made the case exceptional).

Finally, the Court finds Plaintiff's proposed fees are reasonable. Section 285 permits the award of "reasonable" attorneys' fees. Federal Circuit law controls the calculation of reasonable attorney fees in patent infringement cases. *Bywaters v. United States*, 670 F.3d 1221, 1227-28 (Fed. Cir. 2012). "Normally this will encompass all hours reasonably expended on the litigation." *Mathis v. Spears*, 857 F.2d 749, 755-56 (Fed. Cir. 1988); *see also Monolithic Power*

*Systems, Inc. v. O2 Micro International Ltd.*, 726 F.3d 1359 (Fed. Cir. 2013) (affirming an exceptional finding for a full award of attorney fees when the exceptional conduct spanned the entire case).

The Federal Circuit has endorsed the "lodestar" approach to calculating reasonable attorneys' fees, which requires multiplying the number of hours reasonably expended by a reasonable hourly rate. *Bywaters*, 670 F.3d at 1225-26; *Lumen View Tech. LLC v. Findthebest.com, Inc.*, 811 F.3d 479, 483 (Fed. Cir. 2016) (lodestar method yields "a presumptively reasonable attorney fee amount").[1]

The Court finds the hourly rates supplied by Plaintiff's counsel to be reasonable given time and labor required as well as requisite experience and reputation of counsel. The Court further finds the hours worked reasonable, especially given Plaintiff's ten percent reduction. Plaintiff's motion for attorney fees is GRANTED in the amount of $2,250,000.

---

[1] To determine the lodestar amount the court may consider the following factors:
> (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) any time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Fischel v. Equitable Life Assur. Soc'y of U.S.*, 307 F.3d 997, 1007 n.7 (9th Cir. 2002) (quotation omitted). A rote recitation of the relevant factors is unnecessary as long as the court adequately explains the basis for its award of attorney fees. *McGinnis v. Kentucky Fried Chicken of Cal.*, 51 F.3d 805, 809 (9th Cir. 1995).

III.    **Interest Rates (ECF Nos. 352)**

A.  **Pre-judgment Interest**

In patent litigation, prejudgment interest on damages is awarded pursuant to 35 U.S.C. §

284, which states in relevant part:

> Upon a finding for the claimant the court shall award the claimant
> damages adequate to compensate for the infringement, but in no
> event less than a reasonable royalty for the use made of the
> invention by the infringer, together with interest and costs as fixed
> by the court.

This interest should be awarded from the time infringement began until the entry of judgment.

*See, e.g.*, *Bio-Rad Laboratories, Inc. v. Nicolet Instrument Corp.*, 807 F.2d 964, 967 (Fed. Cir.

1986). Prejudgment interest is "necessary" in a typical case "to ensure the patent owner is placed

in as good a position as he would have been in had the infringer entered into a reasonable royalty

rate." *Gen. Motors Corp. v. Devex Corp.*, 461 U.S. 648, 655 (1983). "[P]rejudgment interest

should ordinarily be awarded absent some justification for withholding such an award." *Id.* at

657.

Courts must also determine the proper rate to apply. Because there is no standard rate for

calculating prejudgment interest provided in the statute, district courts have "substantial

discretion" to determine the interest rate in patent infringement cases. *See Gyromat Corp. v.

Champion Spark Plug Co.*, 735 F.2d 549, 556–57 (Fed. Cir. 1984) (concluding "that the

determination whether to award simple or compound interest [ ] is a matter largely within the

discretion of the district court").

District courts within the Ninth Circuit regularly rely on state statutory interest rates in

patent infringement cases. *See, e.g.*, *Presidio Components Inc. v. Am. Technical Ceramics Corp.*,

723 F.Supp.2d 1284, 1330 (S.D. Cal. 2010) (awarding California statutory rate), *aff'd in part*,

*vacated in part*, 702 F.3d 1351 (Fed. Cir. 2012); *In re Hayes Microcomputer Prods.*, 766 F.Supp. 818, 824-25 (N.D. Cal. 1991) (same), *aff'd*, 982 F.2d 1527 (Fed. Cir. 1992).

Under Oregon Rev. Stat. ("ORS") § 82.010, "[t]he rate of interest . . . is nine percent per annum and is payable on: (a) [a]ll moneys after they become due . . . ." *See* ORS § 82.010(1)(a). Courts additionally have discretion to choose the state statutory rate over the Treasury-Bill ("T-Bill") rate specifically. *See Bard Peripheral Vascular, Inc. v. W.L. Gore & Assoc., Inc.*, 2009 WL 920300, at *2–3 (D. Ariz. Mar. 31, 2009) (awarding state statutory rate of 10 percent because "[i]n the context of patent infringement, the T-Bill rate is often inappropriate, as its lower rate of return has the potential to result in a windfall profit for the wrongful interloper . . . ."), *aff'd*, 670 F.3d 1171 (Fed. Cir. 2012), *vac. in part on other grounds*, 682 F.3d 1003 (Fed. Cir. 2012); *Server Tech., Inc. v Am. Power Conversion Corp.*, 2015 WL 1505654, at *6 (D. Nev. Mar. 31, 2015) ("[T]he court finds that [the] proposed Treasury Bill rate would not cover inflation over the infringing period . . . .").

Here, Plaintiff argues prejudgment interest should be based upon the Oregon state statutory rate of nine percent, while Defendant argues the lower T-Bill rate should apply. On this record, the Court concludes that the nine percent annum Oregon rate places Plaintiff in "as good a position as he would have been in had the [Defendant] entered into a reasonable royalty rate." *Gen. Motors Corp.*, 461 U.S. at 655. Accordingly, Plaintiff's is entitled to prejudgment interest at the rate of nine percent simple interest per annum.[2]

### B. Post-judgment Interest

Pursuant to 28 U.S.C. § 1961, "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." Post-judgement interest is "calculated from the date of

---

[2] Plaintiff's request for prejudgment interest to be compounded quarterly is DENIED.

the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity

Treasury yield, as published by the Board of Governors of the Federal Reserve System." 28

U.S.C. § 1961; *Wordtech Sys., Inc. v. Integrated Network Solutions, Inc.*, 2009 WL 981843, at *7

(E.D.Cal. Apr. 13, 2009). Accordingly, Plaintiff is entitled to post-judgment interest at the

current rate published by the Board of Governors of the Federal Reserve System.

> Plaintiff's motion for pre- and post-judgment interest is GRANTED as articulated above.

## IV.    Judgment as a Matter of Law or New Trial (ECF No. 362)

> Defendant renews its motion for a judgment as a matter of law under Rule 50(b); or, in

the alternative, for a new trial under Rule 59. *See generally* Avery Dennison's Renewed Mot. J.

Matter Law & Mot. New Trial, ECF No. 362 ("Def.'s JMOL"). Specifically, Defendant asserts

that: (1) claim 1 of the '967 Patent was not infringed by its products; (2) the '967 Patent are

invalid pursuant to 35 U.S.C. section 101, 102, and 103; and (3) the damages awarded by the

jury were not supported by substantial evidence. *See Id.* In the alternative, Defendants move the

court to vacate the jury's verdict and order a new trial. *Id.*

### A.    Standards

> For issues not unique to patent law, such as sufficiency of the evidence on issues tried to

the jury, the Court applies the law of the regional circuit in which it sits, here the Ninth Circuit.

*See Duro-Last, Inc. v. Custom Seal, Inc.*, 321 F.3d 1098, 1106 (Fed.Cir. 2003) (citations

omitted). Otherwise, for all substantive issues of patent law, the Court applies the law of the

Court of Appeals for the Federal Circuit. *See id.* (citations omitted).

> In the Ninth Circuit, a judgment as a matter of law ("JMOL") pursuant to Rule 50(a) is

proper only "if the evidence, construed in the light most favorable to the nonmoving party,

permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict."

*Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002) (citation omitted). Phrased otherwise, a JMOL should be granted only if "'there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue'" and the verdict reached by the jury is "'against the great weight of the evidence.'" *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1005 (9th Cir. 2004) (citations omitted). "Although the court should review the record as a whole, it must disregard evidence favorable to the moving party that the jury is not required to believe, and may not substitute its view of the evidence for that of the jury." *Pavao*, 307 F.3d at 918 (citation and quotation marks omitted). Thus, the Court must keep in mind that "credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Hangarter*, 373 F.3d at 1005 (internal quotation marks and citations omitted).

Although Defendant frames some of its arguments in terms of Rule 50, it essentially asks the Court to amend rulings it has already made. As such, the Court will evaluate those arguments under Rule 59(e), which permits the alteration or amendment of a prior judgment. Rule 59(e) is an "extraordinary remedy" available only where: (1) the court committed manifest errors of law or fact; (2) the court is presented with newly discovered or previously unavailable evidence; (3) the decision was manifestly unjust; or (4) there is an intervening change in the controlling law. *See Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011) (citing *McDowell v. Calderon*, 197 F.3d 1253, 1255 n.1 (9th Cir. 1999) (en banc)); *see also 389 Orange Street Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999) (explaining that a judgment should not be reconsidered under Rule 59(e) "absent highly unusual circumstances"). A Rule 59(e) motion may not be used to "raise arguments or present evidence for the first time when they could

reasonably have been raised earlier in the litigation." *Allstate*, 634 F.3d at 1111 (citing *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000)).

Defendant's request for a new trial is governed by Rule 59(a), which permits courts to grant requests for a new trial in limited circumstances. "Upon the Rule 59 motion of the party against whom a verdict has been returned, the district court has 'the duty . . . to weigh the evidence as [the court] saw it, and to set aside the verdict of the jury, even though supported by substantial evidence, where, in [the court's] conscientious opinion, the verdict is contrary to the clear weight of the evidence.'" *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (citation omitted, alteration in original). Bases for a new trial include: (1) a verdict against the clear weight of the evidence, *see Landes Const. Co., Inc. v. Royal Bank of Canada*, 833 F.2d 1365, 1371 (9th Cir. 1987); (2) evidence, discovered after trial, that would not have been uncovered earlier through the exercise of due diligence and that is of such magnitude that its production at trial would likely have changed the outcome of the case, *see Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992–93 (9th Cir. 2001) (quoting *Defenders of Wildlife v. Bernal*, 204 F.3d 920, 929 (9th Cir. 2000) ); (3) jury misconduct, *see United States v. Romero-Avila*, 210 F.3d 1017, 1024 (9th Cir. 2000); and (4) error in law that has substantially prejudiced a party, *see Ruvalcaba v. City of Los Angeles*, 64 F.3d 1323, 1328 (9th Cir. 1995). The decision to grant a new trial falls within the sound discretion of the trial court. *Kode v. Carlson*, 596 F.3d 608, 611 (9th Cir. 2010).

### B.    Validity Judgments

#### 1.    Section 101

Defendant asserts it is entitled to judgment as a matter of law because Plaintiff's asserted claims are invalid under 35 U.S.C. § 101. Section 101 defines patentable subject matter as "any

new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. The Supreme Court has "long held that this provision contains an important exception: laws of nature, natural phenomena, and abstract idea are not patentable." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014) (citation omitted). Acknowledging that "all inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas[,]" the Court noted that "an invention is not rendered ineligible for patent simply because it involves an abstract concept." *Id.* at 217. The Supreme Court "tread[ed] carefully in construing this exclusionary principle lest it swallow all of patent law." *Id.*

To distinguish abstract ideas from patent-eligible concepts, the Supreme Court set forth a two-step test commonly referred to as an *Alice* analysis. *Id.* at 217–18. The first step is to determine whether the claims at issue are directed to an abstract idea. *Id.* at 217. If the claims are directed to an abstract idea, the inquiry moves to step two to decide whether there are any additional elements to "transform the nature of the claim" into a patent-eligible application. *Id.* That is, whether there is an inventive concept—an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the abstract idea itself. *Id.* at 217-18.

Defendant's attempt to "relitigate old matters"—specifically the Court' s *Alice* analysis at the summary judgment stage—is misplaced. *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008) (internal citations omitted). The Court finds no reason to depart from its earlier ruling rejecting Defendant's contention "that the '967 Patent claims fail the first step of the *Alice* test." September 2020 O&O, 2020 WL 5518184, at *7. In the September 2020 O&O, the Court held at step 1 of the *Alice* analysis that the '967 patent claims were not directed to an abstract idea, but

rather to "an encoded RFID transponder implemented with a memory structure accommodating a specific hardware-based number scheme." *Id.* at *8.

In so holding, the Court effectively granted summary judgment for Plaintiff as to the validity claim. *See Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*, 955 F.3d 1317, 1322 (Fed. Cir. 2020) ("As discussed above, the district court did not deny summary judgment of ineligibility on the basis of additional facts that needed to be, or even could be, presented at trial. The court affirmatively concluded that the claims are not directed to an abstract idea but rather to an improved technological solution to mobile phone security software.") (citation and quotation marks omitted), *cert. denied*, 141 S. Ct. 2624 (2021). Moreover, at oral argument, the Court made clear that its prior ruling answered the question of validity in Plaintiff's favor.

Accordingly, Defendant's section 101 arguments provide no basis for deviating from the Court's prior ruling nor granting Defendant's JMOL.[3]

### 2.    Claim Construction

Defendant's claim construction arguments relating to "printed matter" are not properly before the Court. "Printed matter" assertions are a type of claim construction argument. *Praxair Distrib. v. Mallinckrodt Hosp. Prods. IP*, 890 F.3d 1024, 1033 (Fed. Cir. 2018). As such, the Court declines to consider the arguments at this stage of the litigation. *See Lazare Kaplan Int'l v. Photoscribe Techs., Inc.*, 628 F.3d 1359, 1376 (Fed. Cir. 2010) (explaining that claim construction arguments presented for the first time in post-trial motions are waived).

---

[3] For this reason, the Court need not, and does not, reach step two of Defendant's *Alice* argument.

3.    Priority Date

Defendant's arguments relating to additional evidence regarding the proper priority date

also fail. Despite the fact that the Court decided that the '967 patent was entitled to a priority

date of May 21, 2008 in the April 30, 2020 Opinion and Order ("April 2020 O&O on Validity"),

ECF No. 167, Defendant nevertheless asserts that it "respectfully submits that such finding was

erroneous" and argues instead that the appropriate priority date is July 21, 2011. Def.'s JMOL 7

n.4. For the reasons articulated in the April 2020 O&O on Validity, the Court declines to deviate

from its prior ruling.[4]

To the extent that Defendant attempts to offer "additional evidence," a summary

judgment determination is not judged according to a litigant's trial offer of proof, but according

to the record as it existed during Rule 56 proceedings. *See Kirshner v. Uniden Corp. of Am.*, 842

F.2d 1074, 1077 (9th Cir. 1988) (considering only record before the district court at time it made

the decision being reviewed); *see also Padgett v. Wright*, 516 Fed. Appx. 609, 610–11 (9th Cir.

2013) ("We do not consider [trial testimony] when reviewing the grant of summary judgment.").

4.    Obviousness

Defendant's arguments related to obviousness also fail. The Court's September 2020

O&O disposed of Defendant's invalidity arguments based on *RFID for Dummies* alone and in

combination with the SGTIN-96 Tag Standard, as well as the alleged *Kuhno* reference. ECF No.

205. The Court also disposed of Defendant's invalidity arguments based on its reliance on the

"Paxar" products in combination with the same SGTIN-96 Tag Standard, as well as the

---

[4] Defendant's enablement challenge also fails for similar reasons. The Court granted Plaintiff's *Daubert* motion on Defendant's enablement defense as well as Plaintiff's *limine* motion on the subject and declines to reconsider its prior reasoning. *See* Omnibus Order on Motions in Limine and *Daubert* Motion 2, ECF No. 286 (granting Plaintiff's motion relating to Defendant's enablement defense testimony and excluding portions of Defendant's expert testimony).

LeSportSac products, in its grant of Plaintiff's Rule 50(a) motion at trial. The Court finds no basis for altering its prior rulings on these issues. To the extent Defendant relies on litigation theories it intentionally discarded for trial, those arguments were rejected when the Court granted Plaintiff's motion in *limine* on the issue, which it declines to reconsider now. *See* Omnibus Order on Motions in Limine and Daubert Motion 2, ECF No. 286.

### C.    Infringement Judgments

#### 1.    Literal Infringement

Defendant asserts that it is entitled to judgment as a matter of law on infringement because its accused products do not infringe the '967 patent. However, Defendant failed to bring this challenge within its Rule 50(a) motions at trial. Accordingly, the argument has been waived. *Wei Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1028-29 (9th Cir. 2003) (the result of failing to raise such an issue at trial is "a complete waiver, precluding our consideration of the merits of the issue."); *Freund v. Nycomed Amersham*, 347 F.3d 752, 761 (9th Cir. 2003) ("A party cannot raise arguments in its post-trial motion for judgment as a matter of law under Rule 50(b) that it did not raise in its preverdict Rule 50(a) motion."). Moreover, Defendant's Rule 50 motion is not a proper vehicle to challenge the Court's prior summary judgment ruling that the PCTag literally infringes.

Defendant's Commissioning Authority literal infringement argument is properly before the Court under Rule 50. However, it fails because the jury returned a verdict that resolved disputed facts on the issue. Viewing the evidence in the light most favorable to Plaintiff as the Court is required to do in light of the jury's verdict, the jury could reasonably conclude that the Commissioning Authority tags contain element F.

2.    Equivalents Infringement

Defendant asserts that it is entitled to judgment as a matter of law because Plaintiff failed to meet its burden of showing that the "unique" correspondence limitation of claim 1 was satisfied under the doctrine of equivalents by the accused Commissioning Authority products. The Federal Circuit has explained that to establish infringement under the doctrine of equivalents:

> [A] patentee must . . . provide particularized testimony and linking argument as to the 'insubstantiality of the differences' between the claimed invention and the accused device or process, or with respect to the function, way, result test when such evidence is presented to support a finding of infringement under the doctrine of equivalents. Such evidence must be presented on a limitation-by-limitation basis. Generalized testimony as to the overall similarity between the claims and the accused infringer's product or process will not suffice.

*AquaTex Indus., Inc. v. Techniche Sols.*, 479 F.3d 1320, 1328 (Fed. Cir. 2007) (quoting *Texas Instruments, Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558 (Fed.Cir.1996)).

Defendants contend that Dr. Engels' trial testimony was conclusory on the issue and therefore inadequate as a matter of law. Dr. Engels presented expert testimony at trial that specified substantial similarity between the function, way, and result of limitation F, versus any differences that might be identified in Commissioning Authority tags. Dr. Engels also testified as to his opinion that whatever differences there were would be "insubstantial."

That testimony was sufficient to overcome a Rule 50(b) challenge under Federal Circuit law interpreting FRE 705. *See Symbol Technologies, Inc. v. Opticon, Inc.*, 935 F.2d 1569, 1576 (Fed. Cir. 1991) ("In short, [the patentee] was permitted to rest its *prima facie* case on [the] expert testimony, including charts, that the patents were infringed [under an equivalency theory], and the District Court was free to accept or reject that evidence."). "To the extent that

[Defendant] challenged this testimony [on cross-examination], the verdict indicates that the jury accepted [Plaintiff's] proffer. To the extent that [Defendant] failed to challenge this testimony, [Defendant] has waived its right to raise the issue." *Lucent Techs., Inc. v. Newbridge Networks Corp.*, 168 F. Supp. 2d 181, 218 (D. Del. 2001).

### 3.     Sales or Manufacture Outside the United States.

Defendant next argues that certain unquantified sales occurred outside the United States and thus cannot meet the requirement under 35 U.S.C. § 271(a) of a "sale" in this country. Because this argument was not brought within Defendant's Rule 50(a) motions at trial, the argument has been waived and the Court will not consider it. *See Wei Zhang*, 339 F.3d at 1028–29 *Freund*, 347 F.3d at 761.

Moreover, on the record before the jury, it was appropriate for the jury to have inferred that all infringing "sales" occur in the United States based on Mr. Pellegrino's testimony and testimony from the other witnesses at trial. As for Defendant's 35 U.S.C. § 271(f) argument, the Court previously rejected that argument on summary judgment and finds no basis to reconsider its ruling. *See* September 2020 O&O 31–32, ECF No. 205.

### D.     **Damages Judgments**

Defendants assert it is entitled to judgment as a matter of law reducing the damages award. Specifically, it argues that damages should be reduced because: (1) the jury's damages calculation was overstated commensurate with the number of Commissioning Authority tags that were encoded in-plant by Avery Dennison customers; (2) the jury's damages calculation was overstated commensurate with the number of inlays included; (3) the RFID transponders manufactured and sold overseas and their inclusion as part of a damage award was

improper; and (4) intervening rights apply and the damages award is overstated in that it includes products that were sold prior to the issuance of the reexamination certificate.

Defendant first two arguments are foreclosed by its own litigation strategies both throughout discovery and at trial. For example, Defendant presented insufficient information to make such reductions during discovery, declined to present any quantification of such reductions during trial, and offered no expert analysis for exposure to cross-examination on how or why such reductions impact damages.

Where "actual damages cannot be ascertained with precision because the evidence available from the infringer is inadequate, damages may be estimated on the best available evidence, taking cognizance of the reason for the inadequacy of proof and resolving doubt against the infringer." *Sensonics, Inc. v. Aerosonic Corp.*, 81 F.3d 1566, 1572 (Fed. Cir. 1996) (citation omitted). Further, "[w]hen the calculation of damages is impeded by incomplete records of the infringer, adverse inferences are appropriately drawn." *Id.*

The Court also finds significant that the royalty based rate evidence and the base instruction went to the jury without objection. The Court finds that the record here contained sufficient evidence to support the jury's conclusion on the issue of damages. *Del Monte Dunes at Monterey, Ltd. v. City of Monterey*, 95 F.3d 1422, 1435 (9th Cir. 1996) (explaining that courts give "substantial deference to a jury's finding of the appropriate amount of damages" and "must uphold the jury's finding unless the amount is grossly excessive or monstrous, clearly not supported by the evidence, or based only on speculation or guesswork" (citations omitted)), *aff'd*, 526 U.S. 687 (1999).

As to Defendant's third argument for reducing the jury's damages award, the foreign sales issue was waived because it was not raised in Defendant's Rule 50(a) motion. The Court

declines Defendant's invitation to reconsider its intervening rights ruling that Defendant lost at the pleadings stage of this litigation and notes that Rule 50 is an improper vehicle for such a challenge. *See* April 30, 2020 Op. & Order, ECF No. 166 ("Judgment on the Pleadings O&O") (finding "that intervening rights do not apply and Defendant's affirmative defenses of intervening rights fail on their face" and granting Plaintiff's motion "as to Defendant's affirmative defenses of intervening rights"). Accordingly, the Court concludes that the damages award found ample support in the record.

In sum, many of Defendant's arguments are not properly before the Court because they were not properly preserved in Defendant's Rule 50(a) motions at trial; others fails because they are procedurally improper attempts to challenge this Court's prior rulings; those that are properly brought pursuant to Rule 50(b) fail because the Court "may not substitute its view of the evidence for that of the jury." *Pavao*, 307 F.3d at 918.

Defendant's motion for a judgment as a matter of law is DENIED.

### E.    New Trial

Defendant asserts that the Court committed reversable error requiring a new trial in (1) excluding the testimony of David Yurkerwhich regarding the Round Rock and Intermec licenses; and (2) not including a lump sum jury instruction and a lump sum line on the verdict form.[5]

Defendant's first argument ignores the Court's limine ruling that "portions of Mr. Yurkevich's testimony relating to the non-comparable patents cannot pass the *Daubert* threshold" and would therefore be excluded. *See* Omnibus Order on Motions in Limine and

---

[5] Defendant also asserts that a new trial is required and incorporate by reference the additional arguments outlined in their judgment as a matter of law briefing. For the reasons articulated in the Court's discussion of Defendant's judgment as a matter of law arguments, the Court concludes they provide no basis for granting a new trial under Rule 59(a) as well.

Daubert Motion 2–3, ECF No. 286. Defendant's arguments to the contrary fail to provide a basis for the Court to reconsidering its *Daubert* ruling.

Defendant's second argument in favor of a new trial, fares no better. Nothing in Defendant's briefing has persuaded the Court to deviate from its ruling, after lengthy attorney argument, that Defendant had not presented a lump sum damages calculation but instead a starting point for discussions. In other words, the Court is not "left with the definite and firm conviction that a mistake has been committed" as to either of Defendant's contentions. *Landes Constr. Co. v. Royal Bank of Can.*, 833 F.2d 1365, 1372 (9th Cir. 1987) (internal quotations omitted).

Defendant's motion for a new trial is DENIED.

## V.      Ongoing Royalties (ECF No. 353)

Plaintiff moves for an ongoing royalty rate $0.0075. ECF No. 353. Defendant urges the Court to "defer any decision on the ongoing royalty until after the conclusion of the appeal[.]" ECF No. 359 at 2. For the reasons explained below, the Court finds an ongoing royalty rate of $.009 is appropriate.

Following a jury verdict of infringement, a district court may award an ongoing royalty for continued patent infringement. *See Paice LLC v. Toyota Motor Corp.*, 504 F.3d 1293, 1315 (Fed.Cir. 2007). The parties should ordinarily be given an opportunity to negotiate a license regarding future use of the patented invention, but if they are unable to reach agreement, the district court can "step in to assess a reasonable royalty in light of the ongoing infringement." *Id.*

An ongoing royalty is a form of equitable relief authorized under 35 U.S.C. § 283. *See id.* at 1315 n.16. Courts are not bound by the prejudgment royalty rate found by the jury. *Amado v. Microsoft Corp.*, 517 F.3d 1353, 1361–62 (Fed.Cir. 2008). "[P]resuit and post judgment acts of

infringement are distinct, and may warrant different royalty rates given the change in the parties'

legal relationship and other factors." *Paice*, 504 F.3d at 1317 (Rader, J., concurring)

The Federal Circuit has summarized how courts should determine a post-verdict royalty:

> In *Amado v. Microsoft Corp.*, we held that there is a "fundamental difference" between "a reasonable royalty for pre-verdict infringement and damages for post-verdict infringement." 517 F.3d 1353, 1360 (Fed. Cir. 2008). For example, when calculating an ongoing royalty rate, the district court should consider the "change in the parties' bargaining positions, and the resulting change in economic circumstances, resulting from the determination of liability." *Id.* at 1362. When patent claims are held to be not invalid and infringed, this amounts to a "substantial shift in the bargaining position of the parties." *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1342 (Fed. Cir. 2012). We have also instructed district courts to consider changed economic circumstances, such as changes related to the market for the patented products.
>
> The requirement to focus on changed circumstances is particularly important when, as in this case, an ongoing royalty effectively serves as a replacement for whatever reasonable royalty a later jury would have calculated in a suit to compensate the patentee for future infringement. The later jury would necessarily be focused on what a hypothetical negotiation would look like after the prior infringement verdict. Therefore, post-verdict factors should drive the ongoing royalty rate calculation in determining whether such a rate should be different from the jury's rate.

*XY, LLC v. Trans Ova Genetics, L.C.*, 890 F.3d 1282, 1297 (Fed. Cir. 2018) (some citations

omitted).

"Ongoing royalties may be based on a post-judgment hypothetical negotiation using the

*Georgia-Pacific* factors." *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350,

1370 (Fed. Cir. 2017).[6]

---

[6] The *Georgia-Pacific* factors include: "1. The royalties received by the patentee for the licensing of the patent in suit, proving or tending to prove an established royalty. 2. The rates paid by the licensee for the use of other patents comparable to the patent in suit. 3. The nature and scope of the license, as exclusive or non-exclusive; or as restricted or non-restricted in terms of territory or

Turning first to the change in circumstances between the parties, the Court finds that Plaintiff's bargaining position was significantly improved after the jury's determination that Defendant infringed the '967 patent. Turning next to the relevant *Georgia-Pacific* factors, the Court finds factors eight through ten weigh in favor of applying a higher ongoing royalty rate. Generally, these factors establish the profitability of products made under the patent, their commercial success and current popularity, as well as utility advantages and benefits gained through use of the patented invention. The evidence at trial demonstrated that Defendant profited significantly through the extensive use of infringing radio frequency identification ("RFID") tags; Defendant's customers demanded tags encoded in a manner that infringed the '967 Patent;

---

with respect to whom the manufactured product may be sold. 4. The licensor's established policy and marketing program to maintain his patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly. 5. The commercial relationship between the licensor and licensee, such as, whether they are competitors in the same territory in the same line of business; or whether they are inventor and promoter. 6. The effect of selling the patented specialty in promoting sales of other products of the licensee; that existing value of the invention to the licensor as a generator of sales of his non-patented items; and the extent of such derivative or convoyed sales. 7. The duration of the patent and the term of the license. 8. The established profitability of the product made under the patent; its commercial success; and its current popularity. 9. The utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results. 10. The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention. 11. The extent to which the infringer has made use of the invention; and any evidence probative of the value of that use. 12. The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions. 13. The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer. 14. The opinion testimony of qualified experts. 15. The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee— who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license." *Georgia-Pac. Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).

and Defendant continued infringement at high volumes throughout the litigation with the company having no specific plan or desire to move away from the using the infringing schemas. The Court also has considered Defendant's disclosure of substantially more infringing tags post-trial and concludes that the post-trial discovery of a substantially sizeable number of additional infringing tags increases Plaintiff's negotiating leverage.

As such, the Court concludes that an ongoing royalty rate of royalty rate $0.009 is appropriate in this case beginning May 14, 2021, through the expiration of the '967 patent. Plaintiff's motion for an ongoing royalty rate is GRANTED as described above.

## VI.    Sanctions (ECF No. 366)

Plaintiff moves for sanctions based on Defendant's post-trial disclosure of additional infringing Electronic Product Codes ("EPCs") not produced in pre-trial discovery nor presented to the jury. ECF No. 366. After trial, Defendant realized that its attempts to identify all relevant RFID programs were flawed, and it had failed to identify all the relevant programs that contained infringing EPCs. *See* Def.'s Suppl. Resp. Pl.'s Mot. Sanctions 2, ECF No. 404; *see also* Def.'s Opp'n Mot. Sanctions, ECF No. 379. Ultimately, Defendant identified 2,092,742,863 additional EPCs that it concedes should be added to the judgment. *Id.* at 5. Defendant argues, however, that there is no basis for sanctions because Defendant promptly disclosed the "new information" it identified. *See id.* Because the Court concludes sanctions are appropriate under Rule 37, the Court declines to consider Plaintiff's additional arguments regarding the Court's inherent authority and 28 U.S.C. § 1927.

"Rule 37(c)(1) was adopted to provide explicit authority for excluding evidence and *imposing other sanctions* for failure to supplement disclosures and discovery responses." 8A Fed. Prac. & Proc. Civ. § 2050 (3d ed.) (emphasis added). "Enforcement encourages attorneys

and parties to identify undisputed issues early to avoid unnecessary costs. Failure to identify

those issues wastes the resources of parties and courts." *Marchand v. Mercy Medical Center*, 22

F.3d 933, 936 (9th Cir. 1994); *see also Campbell Indus. v. M/V Gemini*, 619 F.2d 24, 27 (9th Cir.

1980) ("parties have a duty, which may arise even without a court order, seasonably to amend

discovery responses that were false when made or have since become false"). Specifically, Rule

37(c) provides:

> (1) Failure to Disclose or Supplement. If a party fails to provide
> information . . . as required by Rule 26(a) or (e), the party is not
> allowed to use that information or witness to supply evidence on a
> motion, at a hearing, or at a trial, unless the failure was
> substantially justified or is harmless. In addition to or instead of
> this sanction, the court, on motion and after giving an opportunity
> to be heard:
>> (A) may order payment of the reasonable expenses,
>> including attorney's fees, caused by the failure;
>> (B) may inform the jury of the party's failure; and
>> (C) *may impose other appropriate sanctions*, including any
>> of the orders listed in Rule 37(b)(2)(A)(i)-(vi)

(emphasis added).

District courts have "particularly wide latitude . . . to issue sanctions under Rule 37(c)(1).

This particular subsection, implemented in the 1993 amendments to the Rules, is a recognized

broadening of the sanctioning power." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d

1101, 1106 (9th Cir. 2001) (citations omitted). The Advisory Committee Notes explain that the

sanctioning authority "provides a strong inducement for disclosure of material . . . ."

Fed.R.Civ.P. 37 advisory committee's note (1993). The "without substantial justification" and

"harmless" safeguard against "unduly harsh penalties in a variety of situations." *Id.*

The Court concludes that a financial sanction is appropriate. Because the default remedy

of exclusion is unavailable given the procedural posture of this case, the Court concludes that a

sanction tied to the number of infringing tags determined to exist as of the date of the verdict is

an appropriate, reasonable, and proportionate method for sanctioning Defendant. The Court imposes a sanction amount of $.0025/tag. The total number of tags upon which this sanction is to be applied includes the additional tags the parties stipulated would be part of the original judgment. To be clear, the Court is not revising the royalty rate the jury awarded. In crafting an appropriate remedy, the Court considered Defendant's protracted discovery failures and disingenuous explanations that the discovery failures were simple oversights. This Court has exercised a great deal of patience and extended professional courtesies to both parties through several years of litigation. And yet, even on the final day of post-trial hearings, Defendant could not assure the Court that it had ever reliably sought the discovery to which Plaintiff was entitled—its own purported expert who would be able to explain how the search for potentially infringing tags had been conducted was withdrawn because Defendant had to acknowledge the expert was never asked to conduct a search in the first place. To be fair, oversights in complex discovery happen. Hence the reason the dictates of professionalism encourage every lawyer, and judge, to exercise a bit of grace. But here, Defendant repeatedly opted to stick its head in the sand, expecting that everyone else would do the same. While the Court can appreciate Defendant's counsel's embarrassment of her client's failure to take discovery seriously, her apologies do not absolve Defendant's patent and continuous disregard for the seriousness of this litigation and its expected obligations. To appropriately sanction Defendant, a sanction amount tied to the number of tags that served the basis for the jury award is reasonable. While the known number of these tags is large, it does not include the unknown number of ongoing infringing tags. Nor does it include the unknown number of tags for which this Court has little confidence Defendant will confirm existed at the time of trial but did not produce. This sanction will provide

"a strong inducement" for future litigants to accurately disclose and supplement discoverable information subject to Rule 26.

Plaintiff's motion for sanctions is GRANTED.

## CONCLUSION

For the reasons explained above, Plaintiff's Bill of Costs (ECF No. 350) is GRANTED in part. Plaintiff's Motion for Attorney Fees (ECF No. 351) pursuant to 35 U.S.C. § 285 is GRANTED. Plaintiff's Motion for Pre- and Post-Judgment Interest (ECF No. 352) is GRANTED. The Court finds a pre-judgment interest rate of 9% simple interest appropriate. Post-judgment interest will be set pursuant to statute. Plaintiff's Motion for Ongoing Royalties (ECF No. 353) is GRANTED. The Court finds an ongoing royalty rate of $.009 is appropriate. Defendant's renewed Motion for Judgment as a Matter of Law or in the Alternative for a New Trial (ECF No. 362) is DENIED. Plaintiff's Motion for Sanctions (ECF No. 366) is GRANTED. The Court finds financial sanctions in the amount of $.0025 per tag is appropriate and applied to the number of for tags identified at trial and as stipulated by the parties.

DATED this 15th day of December 2021.

s/ Mustafa T. Kasubhai
MUSTAFA T. KASUBHAI (He / Him)
United States Magistrate Judge