UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

ADASA INC.,

Plaintiff,

vs.

AVERY DENNISON CORPORATION,

Defendant.

Case No. 6:17-cv-01685-MK

OPINION AND ORDER

Re: DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW UNDER RULE 50(b) AND MOTION FOR RELIEF FROM JUDGMENT UNDER RULE 60(b)

**KASUBHAI,** United States Magistrate Judge:

Defendant Avery Dennison renews its motion for judgment as a matter of law under Rule 50(b) and requests relief from judgment from prior rulings under Rule 60(b). *See generally*

Def.'s Mot. J. Matter Law & Mot. Relief from J., ECF No. 591 ("Def.'s JMOL"). Specifically, Defendant asserts that claim 1 of U.S. Patent No. 9,798,967 (the "'967 patent") is invalid because it is (1) directed to ineligible subject matter under 35 U.S.C. §101; and (2) anticipated by U.S. Patent No. 7,857,221 (the "Kuhno patent") under 35 U.S.C. § 102. *Id.* at 3–13, 19–26. In the alternative, Defendant moves for the Court to alter or amend the judgment under Rule 59(e). *Id.* at 26. Both parties consent to jurisdiction by a U.S. Magistrate Judge. ECF No. 29. For the reasons described below, Defendant's motion is DENIED.

## BACKGROUND

### I. General Background

The '967 patent relates, in part, to methods and systems for commissioning radio-frequency identification (RFID) transponders. '967 patent at 3:27–32. RFID transponders, also known as RFID tags, are used, like barcodes, to identify and track objects by encoding data electronically in a compact label. *Id.* at 1:32–34. But unlike traditional barcodes, RFID tags need not include external, machine-or human-readable labels and can communicate the data they encode over a distance using radio-frequency transmission. *Id.* at 1:34–53, 6:28–59.

To facilitate identifying and tracking an object in the stream of commerce, RFID tags are encoded with information associated with the object through a process known as "commissioning." *Id.* at 1:40–53. The encoded data may include various categories of information, "for example, data representing an object identifier, the date-code, batch, customer name, origin, destination, quantity," etc. *Id.* at 1:45–50. Regardless of the specific categories included, to ensure accurate tracking, it is critical that the data uniquely identify the tagged object. *Id.* at 2:21–22, 2:48–50.

In the RFID industry, uniqueness is ensured by assigning RFID tags an Electronic Product Code (EPC or EPCglobal) in accordance with certain global formatting standards. An EPC is a serialized object number comprising object class information and a serial number that together uniquely identify the associated object. *See id.* at 9:7–15. For example, the EPC may be a Serialized Global Trade Item Number (SGTIN), which consists of a Global Trade Item Number identifying the brand and class of the item (i.e., object class information) followed by a serial number uniquely identifying the tagged item within the brand and class. *Id.* Since objects from the same brand and class will share the same object class information, ensuring the uniqueness of the overall EPC amounts to ensuring uniqueness of the serial number.

Ensuring uniqueness, however, is not necessarily straightforward. *Id.* at 2:49–50. Serialization generally "requires a central issuing authority of numbers for manufacturers, products, and items to guarantee uniqueness and to avoid duplication of numbers." *Id.* at 2:23–25. The issuing authority assigns blocks of numbers to remote locations, wherein each remote location receives the numbers one by one or where the numbering space is partitioned in some manner. *Id.* at 2:25–29. But, in either case, the encoded numbers must generally be reconciled by comparison to a central database "either one or several numbers at a time." *Id.* at 2:30–32.

In the case of EPCglobal numbers, the central issuing authority is known as GS1. *Id.* at 7:61–65, 9:7–15. GS1 distributes blocks of numbers to member companies in a hierarchical manner, wherein each company is authorized to then "further allocate numbers from its upper level database to as many lower database levels as it deems necessary to distribute number authority throughout its enterprise." *Id.* at 7:61–8:3.

Using central databases to distribute the allocated numbers has certain drawbacks. It generally requires encoders to maintain a continuous network connection with the database so

that new serial numbers can be retrieved when an RFID tag is commissioned. *See id.* at 3:27–4:4. But a continuous connection is not always possible and, even when it is, may be plagued by network delays that slow down the commissioning process. *See id.* at 3:64–4:4. This in turn may delay or impair downstream activity, including manual steps in the commissioning or distribution process. *Id.*

The ’967 patent seeks to “overcome[ ] these shortcomings” using systems and methods for commissioning RFID tags “on-demand” and “with no external authorizations or queries required on a transponder-by-transponder basis,” enabling commissioning to proceed without the need for continuous connectivity to a central database. *Id.* at 3:27–35, 3:64–67. In one embodiment, pre-authorized ranges of serial numbers for specific object classes are allocated to lower levels in the hierarchy, for example, individual encoders. *Id.* at 8:4–11. In this embodiment, the object class serial number space is subdivided into sectors defined by a series of fixed “Most Significant Bits” (MSBs), wherein the number of allocatable sectors is determined by the number of MSBs. *Id.* at 8:11–15. For example, according to the SGTIN-96 standard, the serial number space consists of 38 bits which can encode $2^{38}$ distinct serial numbers. If the first 14 of these bits are designated as MSBs, then the serial number space is correspondingly subdivided into $2^{14}$ sectors or “blocks” which can be allocated to as many as $2^{14}$ different encoders. *See id.* at 8:21–29. The remaining 24 bits can then be used to encode a unique serial number space within a given block. *Id.* “Each allocated block of serial numbers represents authority for encoding objects of an object class that can either be used by an encoder for encoding transponders, or allocated to a lower level in the authority hierarchy.” *Id.* at 8:32–36.

Critically, once a block is allocated to an encoder, there is no need to reconnect to a central database until the unique numbers within the block have been exhausted. *See id.* at 8:37–

51. Thus, in the previous example, $2^{24}$, or approximately 16.8 million, RFID tags could be commissioned before reconnection to a central database is required. And by eliminating the need for a continuous connection to the database, the attendant delays are reduced and the commissioning process is improved. The ’967 patent refers to such a system, where only intermittent connection to a central database is necessary, as quasi-autonomous encoding authority. *Id.* at 8:4–7.

Claim 1 is the only claim at issue in Defendant’s motion for judgment as a matter of law. As issued following a 2018 reexamination, claim 1 recites:

> 1. An RFID transponder comprising:
> a substrate;
> an antenna structure formed on the substrate; and
> an RFID integrated circuit chip which is electrically coupled to the antenna structure;
> wherein the RFID integrated circuit chip is encoded with a unique object number, the unique object number comprising an object class information space and a unique serial number space;
> *wherein the unique serial number space is encoded with one serial number instance from an allocated block of serial numbers, the allocated block being assigned a limited number of most significant bits*;
> *wherein the unique serial number space comprises the limited number of most significant bits uniquely corresponding to the limited number of most significant bits of the allocated block and of remaining bits of lesser significance that together comprise the one serial number instance.*

’967 patent at claim 1 (emphasis added).

## II. Procedural History

Relevant to this Motion, in October 2017, Plaintiff Adasa sued Defendant alleging its manufacture and sale of certain RFID tags infringed claim 1 of the ’967 patent.[1] Following

[1] Plaintiff also alleged that Defendant’s manufacture and sale of certain RFID tags infringed claims 2–6, 13, and 14 of the ’967 patent. However, following summary judgment, Plaintiff moved to sever and stay its claims of infringement as to all claims except claim 1, which the Court granted and subsequently dismissed those claims without prejudice.

discovery, both parties sought summary judgment. Defendant moved for summary judgment of noninfringement of claim 1 or, in the alternative, that the asserted claim was ineligible under § 101. Plaintiff moved for summary judgment of infringement and that claim 1 is neither anticipated by the Kuhno patent or the book *RFID for Dummies* nor rendered obvious by *RFID for Dummies* in combination with certain EPC standards.

The Court granted Plaintiff's motion as to validity, granted in part its motion as to infringement, and denied Defendant's motions *in toto*. *Adasa Inc. v. Avery Dennison Corp.*, No. 6:17-CV-01685-MK, 2020 WL 5518184 (D. Or. Sept. 14, 2020), *aff'd in part*, *rev'd in part*, *vacated in part*, *and remanded in part*, 55 F.4th 900 (Fed. Cir. 2022). In addition, while denying Defendant's motion for summary judgment of ineligibility, the Court simultaneously granted judgment in Plaintiff's favor that claim 1 was directed to an encoded RFID transponder implemented with a memory structure accommodating a specific hardware-based number scheme, effectively granting summary judgment in Plaintiff's favor as to patent eligibility under § 101. *Id.* at *8.

The parties then proceeded to trial on the issues of infringement of claim 1 and damages. The jury returned a verdict of infringement and awarded Plaintiff a running royalty of $0.0045 per infringing RFID tag for a total award of $26,641,876.75. Thereafter, Defendant appealed, *inter alia*, the Court's summary judgment rulings. The Federal Circuit (1) affirmed the Court's holding that claim 1 is eligible under § 101 as a matter of law; (2) reversed the Court's grant of summary judgment that *RFID for Dummies* does not anticipate or render obvious claim 1, remanding for a trial limited to claim 1's validity; and (3) reversed the Court's grant of summary judgment of no anticipation based on the Kuhno patent, remanding for further proceedings. *Adasa Inc. v. Avery Dennison Corp.*, 55 F.4th 900, 910–13 (Fed. Cir. 2022).

On July 11, 2023, the parties again proceeded to trial. ECF No. 555 ("Remand Trial"). The jury was tasked with determining whether Defendant proved that claim 1 of the '967 patent (1) is anticipated by the Kuhno prior art; (2) is anticipated by the *RFID for Dummies* prior art; or (3) was obvious in light of RFID for Dummies prior art. Jury Verdict, ECF No. 577.

Ostensibly, to show anticipation or obviousness by a prior art, Defendant questioned Dr. Engels about whether the '967 patent claimed the division of the serial number field into two parts:

> Q. So that field, the serial number field, would be split into two parts; right? The length of the field wouldn't change, but it would be split into two parts, least significant bits and most significant bits; right?
>
> . . .
>
> A. No. It's not the dividing of the field, it's simply how do I allocate a number, though really, how do I create a block of numbers that have the same most significant bits. There's no creation of a new field *within the* [*SGTIN-96*] *standard*.

Pl.'s Resp. to Def.'s JMOL Ex. B at 748:3–14, ECF No. 599-3 (trial transcript) (emphasis added). Dr. Engels further testified that the '967 patent is directed at a specific tag data structure which is part of the overall tag structure, and which works within the existing SGTIN-96 standard. *Id.* at 1004:7–1006:1.

Before the jury's deliberation, Defendant moved for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a) that claim 1 was ineligible under § 101 and anticipated under § 102. The Court denied the motion from the bench. On July 18, 2023, the jury returned the verdict in Plaintiff's favor on all three questions.

On August 17, 2023, Defendant filed the present motion, renewing its motion for judgment as a matter of law under Rule 50(b) and moving for relief from judgment under Rule

60(b). ECF No. 591. Defendant moves in the alternative for relief from judgment under Rule 59(e). For the reasons described below, Defendants motions are DENIED.

**LEGAL STANDARDS**

For issues not unique to patent law, such as sufficiency of the evidence on issues tried to the jury, the Court applies the law of the regional circuit in which it sits. *See Duro-Last, Inc. v. Custom Seal, Inc.*, 321 F.3d 1098, 1106 (Fed. Cir. 2003). Here, the Ninth Circuit controls. Otherwise, for all substantive issues of patent law, the Court applies the law of the Court of Appeals for the Federal Circuit. *Id.*

**I. Fed. R. Civ. P. 50(b)**

Judgment as a matter of law under Rule 50(b) is proper only "if the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict." *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002) (citation omitted). "A Rule 50(b) motion . . . is not a freestanding motion. Rather, it is a renewed Rule 50(a) motion" and its scope is defined accordingly. *E.E.O.C. v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009). "Fed. Rule 50(a) applies only to issues tried by a jury." *Granite State Ins. Co. v. Smart Modular Techs., Inc.*, 76 F.3d 1023, 1030 (9th Cir. 1996).

**II. Fed. R. Civ. P. 60(b)**

Rule 60(b) permits a district court to relieve a party from a final judgment based on newly discovered evidence; fraud, misrepresentation, or misconduct by an opposing party; and any other reason that justifies relief. Fed. R. Civ. P. 60(b)(2)–(3), (6). Relief from judgment under Rule 60(b) "should be granted sparingly to avoid manifest injustice and *only* where extraordinary circumstances prevented a party from taking timely action to prevent or correct an

erroneous judgment." *Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144, 1173 (9th Cir. 2017) (quotations omitted).

**III. Fed. R. Civ. P. 59(e)**

A party may move to alter or amend a judgment pursuant to Rule 59(e). Fed. R. Civ. P. 59(e). However, Rule 59(e) is an "extraordinary remedy" available only where: (1) the court committed manifest errors of law or fact; (2) the court is presented with newly discovered or previously unavailable evidence; (3) the decision was manifestly unjust; or (4) there is an intervening change in the controlling law. *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011) (citing *McDowell v. Calderon*, 197 F.3d 1253, 1255 n.1 (9th Cir. 1999) (en banc)); *See 389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999) (explaining that a judgment should not be reconsidered under Rule 59(e) "absent highly unusual circumstances").

**DISCUSSION**

**I. Patent Subject Matter Eligibility**

Defendant challenges the patentability of the '967 patent because its claims were allegedly directed to the abstract idea of partitioning a number space in the content of an RIFD transponder. Def.'s JMOL at 3. Defendant asserts that Dr. Engels' testimony at the Remand Trial contradicts (1) his prior sworn statements; (2) Plaintiff's repeated representations about the nature of the '967 patent; and (3) the basis for the prior judicial rulings on § 101 eligibility. *Id.* at 1. Defendant moves for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(b) that claim 1 of the '967 patent is directed to ineligible subject matter under 35 U.S.C. § 101. *Id.* at 3.

**A. 35 U.S.C. § 101**

Section 101 of the patent law defines patentable subject matter as "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement

thereof." 35 U.S.C. § 101. The Supreme Court has "long held that this provision contains an important exception: laws of nature, natural phenomena, and abstract idea are not patentable." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014) (citation omitted). Acknowledging that "all inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas[,]" the Supreme Court noted that "an invention is not rendered ineligible for patent simply because it involves an abstract concept." *Id.* at 217. The Supreme Court "tread[ed] carefully in construing this exclusionary principle lest it swallow all of patent law." *Id.*

To distinguish abstract ideas from patent-eligible concepts, the Supreme Court set forth a two-step test, commonly referred to as the *Alice* inquiry. *Id.* at 217–18. The first step is to determine whether the claims at issue are directed to an abstract idea. *Id.* at 217. If the claims are directed to an abstract idea, the inquiry moves to step two to decide whether there are any additional elements to "transform the nature of the claim" into a patent-eligible application. *Id.* That is, whether there is an inventive concept – an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the abstract idea itself. *Id.* at 217–18.

**B. Analysis**

Defendant asserts that prior to the Remand Trial, the Federal Circuit relied on Plaintiff's repeated representations that the '967 patent is not merely an abstract idea because claim 1 is directed to the addition of a particular data field that creates a new memory data structure. Def.'s JMOL at 5. In affirming summary judgment on § 101 eligibility, the Federal Circuit explained that the '967 patent was not an abstract idea because "[i]n essence, the claimed MSBs function as an additional data field within the serial number space that uniquely identifies the allocated block

from which it came." *Adasa Inc.*, 55 F.4th at 909. The basis for this conclusion, Defendant asserts, was undermined at the Remand Trial by Dr. Engels' testimony that the '967 patent is "not the dividing of the field, it's simply how do I allocate a number, though really, how do I create a block of numbers that have the same most significant bits. There's no creation of a new field within the standard." Def.'s JMOL Ex. 1, at 748:11–14, ECF No 591-2 (trial transcript). Plaintiff responds that reconsideration of eligibility under § 101 is foreclosed by the Federal Circuit's mandate, and regardless, Dr. Engels' testimony at the Remand Trial was consistent with Plaintiff's prior representations and the Federal Circuits' reasoning. Pl.'s Resp. to Def.'s JMOL 11–12, ECF No. 599 ("Pl.'s Resp."). The Court concludes that reconsideration of the § 101 issue is barred by the mandate rule and that expert testimony at the Remand Trial does not undermine the Federal Circuit's reliance on the intrinsic patent record.

The mandate rule "precludes the district court on remand from reconsidering matters which were either expressly or implicitly disposed of upon appeal." *United States v. Miller*, 822 F.2d 828, 832 (9th Cir. 1987). As a subset of the law of the case doctrine, the mandate rule "applies most clearly where an issue has been decided by a higher court; in that case, the lower court is precluded from reconsidering the issue and abuses its discretion in doing so except" in limited circumstances. *Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035, 1042 (9th Cir. 2018). Narrow exceptions to the mandate rule are triggered only under extraordinary circumstances, such as the discovery of subsequent evidence that is substantially different. *ArcelorMittal France v. AK Steel Corp.*, 786 F.3d 885, 889 (Fed. Cir. 2015).

For the substantially different evidence exception to apply, the new evidence must differ materially from the evidence in the record when the issue was first decided. *Id.* For example, the 9th Circuit held in *United States v. HOS*, 696 F.3d 869, 872 (9th Cir. 2012) that the district court

properly departed from the law of the case when, despite its previous ruling to the contrary, it found on remand that the defendant was not a minor but was in fact an adult at the time of the offenses based on a recently obtained birth certificate from Mexico. In contrast, in *ArcelorMittal France*, 786 F.3d at 887–89, the patentee's successful prosecution of a reissue patent was insufficient to trigger the extraordinary circumstances exception to the mandate rule; holding, the district court on remand was bound by Federal Circuit's construction of the original claims, even though the reissue claims had broadened that construction.

Defendant asserts that the different evidence exception to the mandate rule applies and moves the Court to effectually reverse the Federal Circuit's holding that claim 1 is patent eligible. Def.'s JMOL at 14–15. Plaintiff responds that the Federal Circuit's ruling prohibits the Court from even considering whether an exception to the mandate rule applies, and regardless, Dr. Engles' testimony at the remand trial was not substantially different evidence warranting amendment to the § 101 Decisions. Pl.'s Resp. at 11–12.[2]

Plaintiff asserts that because the Federal Circuit's mandate foreclosed the § 101 issue, the Court is prohibited from considering whether the new evidence exception applies. Plaintiff's logic is flawed. The mandate is a condition precedent to determining if an exception applies. In other words, the Court only looks to see if an exception applies if there is a mandate barring consideration of an issue. *Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v. U.S. Dep't of Agr.*, 499 F.3d 1108, 1114 (9th Cir. 2007) (*unless* an exception applies, mandate rule prevents a trial court from reconsidering an issue fully decided on appeal); *Milgard Tempering, Inc. v. Selas Corp. of Am.*, 902 F.2d 703, 715 (9th Cir. 1990) (where a legal issue has

[2] Additionally, Plaintiff asserts that the substantially different evidence exception to the mandate rule is inapplicable because judicial holdings of patent eligibility are legal, not factual conclusions. The Court does not address this argument because it concludes that the substantially different evidence exception to the mandate rule does not apply.

been explicitly decided by previous disposition in the case, substantially different evidence exception may allow court's discretion to reevaluate a previously decided legal issue). Nonetheless, the Court finds that the different evidence exception does not apply, barring reconsideration of the § 101 issue.

Dr. Engels' testimony at the Remand Trial does not undermine or alter the record relied on by the Federal Circuit. "*Alice* step one presents a legal question that can be answered based on the intrinsic evidence." *CardioNet, LLC v. InfoBionic, Inc*, 955 F.3d 1358, 1372 (Fed. Cir. 2020). That is, in conducting an *Alice* step one inquiry, courts must "examin[e] the patent claims in view of the plain claim language, statements in the written description, and the prosecution history, if relevant." *Id.* at 1374. "The § 101 inquiry must focus on the language of the Asserted Claims themselves." *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1149 (Fed. Cir. 2016). A court may also take notice of evidence extrinsic to the patent's file and history, such as expert testimony, but only "[i]f the extrinsic evidence is overwhelming to the point of being indisputable[.]" *CardioNet, LLC*, 955 at 1377–74.

Defendant asserts that Dr. Engels' testimony directly contradicts the factual premise underlying the Federal Circuit's opinion. Def.'s JMOL at 15. At the Remand Trial, Dr. Engels testified that the claimed invention is "not the dividing of the field, it's simply how do I allocate a number, though really, how do I create a block of numbers that have the same most significant bits. There's no creation of a new field within the standard." Trial Transcript Ex. 1 at 748:11–14 ECF No. 572. According to Defendant, Dr. Engels' testimony undermines the factual premise of the Federal Circuit's conclusion that "[c]laim 1 of the '967 patent adds an additional data field to the prior art serial number space." *Adasa Inc.*, 55 F.4th at 909 (citing '967 patent at claim 1).

Although the Federal Circuit could have relied on extrinsic evidence, the opinion makes it abundantly clear that the § 101 inquiry relied directly on the language of the ‘967 patent. First, in holding that claim 1 is directed at eligible subject matter under step one of *Alice*, the Federal Circuit cited the language of the ‘967 patent over two dozen times. *Id.* at 907–09. Second, the Federal Circuit quoted claim 1 in its entirety. *Id.* at 905–06. And third, the Federal Circuit concluded that consideration of *Alice* step two was unnecessary because “claim 1, viewed *in light of the specification and considered as a whole*, is directed to patent eligible subject matter.” *Id.* at 910 (emphasis added). Moreover, Defendant acknowledges that Dr. Engels is never mentioned in the opinion. Def.’s Reply *ISO* JMOL 14, ECF No. 601. Although the Federal Circuit could have relied on extrinsic evidence about the nature of claim 1, nothing in the opinion demonstrates that it did, and examples of its reliance on the intrinsic record of the patent abound. Thus, Dr. Engels’ testimony at the Remand Trial is not materially different because it does not undermine the basis of the Federal Circuit’s opinion.

In summary, the mandate rule applies because the Federal Circuit expressly disposed of the § 101 issue, relying directly on the language of the ’967 patent. Dr. Engels’ testimony at the Remand Trial is not materially different evidence because it does not alter the language of the ‘967 patent. Therefore, the substantially different evidence exception to the mandate rule does not apply. The Court is bound by the Federal Circuit’s § 101 decision and Defendant’s motion for JMOL is denied.

**C. Fed. R. Civ. P. 60(b)**

Defendant also moves for relief from judgment on the § 101 decisions pursuant to Fed. R. Civ. P. 60(b)(2), (3), and (6). Def.’s JMOL at 15–16. The mandate rule does not bar a district court from considering a Rule 60(b) motion. *Standard Oil Co. of California v. United States,* 429

U.S. 17, 18–19 (1976). However, a Rule 60(b) motion cannot be used simply to reopen the decision previously decided on appeal; rather, the moving party must show that the motion relates to later events that were not part of the record or issues previously considered. *Id.* at 18.

Rule 60(b)(2) allows courts to relieve a party from final judgment based on "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)[.]" Fed. R. Civ. P. 60(b)(2). The moving party must also show that the evidence "was of such magnitude that production of it earlier would have been likely to change the disposition of the case." *Jones v. Aero/Chem Corp.*, 921 F.2d 875, 878 (9th Cir. 1990) (quotation omitted). Defendant has not met this standard. As described above, in affirming this Court's Motion for Summary Judgment on the § 101 issue, the Federal Circuit relied directly on the language of claim 1, which Dr. Engels' testimony at the Remand Trial does not alter. Thus, even if the Court were to find that Dr. Engels' testimony at the Remand Trial was newly discovered evidence, it would not rise to such a magnitude that earlier production would have been likely to change the disposition of the case. Had Defendant presented Dr. Engels' allegedly contradictory testimony during the Federal Circuit's review of this Court's summary judgment, nothing indicates that the extrinsic evidence would have been "so overwhelming to the point of being indisputable[.]" *CardioNet, LLC*, 955 F.3d at 1374.

Rule 60(b)(3) allows courts to relieve a party from final judgment based on "fraud . . . misrepresentation, or misconduct by an opposing party[.]" Fed. R. Civ. P. 60(b)(3). The moving party must "establish that the conduct complained of prevented the losing party from fully and fairly presenting his case or defense." *Bunch v. United States*, 680 F.2d 1271, 1283 (9th Cir. 1982) (citation omitted). "The rule is aimed at judgments which were unfairly obtained, not at those which are factually incorrect." *In re M/V Peacock on Complaint of Edwards*, 809 F.2d

1403, 1405 (9th Cir. 1987). Defendant has not met this standard. Dr. Engels' allegedly contradictory testimony does not establish that the Federal Circuit's § 101 decisions were obtained by misrepresentations that prevented Defendant from fully and fairly presenting its case during the initial summary judgment proceedings and on appeal. To the contrary, the § 101 inquiries properly focused on the language of the claim itself. *See Synopsys, Inc.*, 839 F.3d at 1149 ("The § 101 inquiry must focus on the language of the Asserted Claims themselves.").

Rule 60(b)(6) allows courts to relieve a party from final judgment based on "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). This "catch-all provision . . . has been used sparingly as an equitable remedy to prevent manifest injustice and is to be utilized only where extraordinary circumstances prevented a party from taking timely action to prevent or correct an erroneous judgment." *Fantasyland Video, Inc. v. Cnty. of San Diego*, 505 F.3d 996, 1005 (9th Cir. 2007) (quotations omitted). The Court is not persuaded that extraordinary circumstances have prevented Defendant from taking timely action in this case. For the reasons explained above, a manifest injustice would not be prevented by setting aside the § 101 decisions based on reliance of subsequently obtained extrinsic evidence that does not alter what the Federal Circuit relied on; namely, the language of the '967 patent.

## II. Anticipation By Prior Art

Defendant asserts that judgment as a matter of law pursuant to Rule 50(b) is appropriate because there was allegedly no evidentiary basis for a reasonable jury to conclude that the '967 patent was not anticipated by the Kuhno patent. Def.'s JMOL at 19. Plaintiff responds that it presented sufficient evidence at the Remand Trial for a reasonable jury to conclude that Defendant failed to meet the clear and convincing standard necessary to prove invalidity. Pl.'s Resp. at 22–23. "[I]n entertaining a motion for judgment as a matter of law, the court . . . may

not make credibility determinations or weigh the evidence." *Go Daddy Software, Inc.*, 581 F.3d at 961 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)). Rather, "[t]he evidence must be viewed in the light most favorable to the nonmoving party, and all reasonable inferences must be drawn in favor of that party." *Id.*

A person is not entitled to a patent that was anticipated by a prior art. 35 U.S.C. § 102(a). "Anticipation is a question of fact, reviewed for substantial evidence when tried to a jury." *Finisar Corp. v. DirecTV Grp., Inc.*, 523 F.3d 1323, 1334 (Fed. Cir. 2008). "If the claimed invention was 'described in a printed publication' either before the date of invention, 35 U.S.C. § 102(a), or more than one year before the U.S. patent application was filed, 35 U.S.C. § 102(b), then that prior art anticipates the patent." *Id.* at 1334.

Prior to the Remand Trial, the Federal Circuit held that the disclosures of the Kuhno patent raised a genuine dispute of fact as to the anticipation of claim 1 of the '967 patent. *Adasa Inc.*, 55 F.4th at 912. The Federal Circuit described the Kuhno patent as disclosing:

> a system for printing labels encoding information about cartons or pallets (i.e., collections of cartons) of products to which they are affixed. J.A. 3958 at 6:27–36. Kuhno's labels include both traditional barcodes and an embedded RFID tag, which, like conventional RFID tags, consists of an encodable radio-frequency device and antenna attached to a substrate. *Id.* at 5:4–22. The barcodes contain "information specific to the cartons and pallets on which the label will be placed," while the RFID tag is encoded with "the same and, optionally, additional information." *Id.* at 5:25–29. For example, this information may include data regarding the product's manufacturer, the product's Unique Product Code (UPC), along with additional information supplied by a retailer or wholesaler which "may depend on the specific needs of the retailer/wholesaler and may be product specific." *Id.* at 6:27–43. Kuhno refers to this collection of information as RFID Printer Data. *Id.* at 6:52–64.
>
> The RFID Printer Data may also include a "unique carton identifier," i.e., a "serial number generated by the system that is unique to each carton" on which an RFID tag is affixed. J.A. 3959

> at 7:4–28. In one embodiment, the carton serial number is the combination of a "predetermined number," for example the Julian calendar date, a "production line number" consisting of the workstation ID and line number, and a trailing "least significant portion" selected from a range of serial numbers determined by the system operator. *See* J.A. 3692 at 14:20–28; J.A. 3963 at 16:8–13. A similar scheme is used to assign unique pallet identifiers to RFID tags affixed to pallets. J.A. 3963 at 16:28–34; *see also* J.A. 3959 at 7:29–49.

*Adasa Inc.*, 55 F.4th at 912 (footnote removed).

Although the Kuhno patent *could* be reasonably interpreted as disclosing the claimed most significant bits and object class information, the jury at the Remand Trial reasonably concluded that it did not. Dr. Engels articulated to the jury the rationale underpinning his expert opinion that the Kuhno patent did not anticipate claim 1 of the '967 patent. Pl.'s Resp. Ex B at 1065:13–25 (trial transcript of Dr. Engels summarizing distinctions between the Kuhno and '967 patents). The jury was informed that Defendant's witness, Mr. Kuhno, was a current employee of Defendant and that they were entitled to consider this fact in weighing his testimony. *Id.* at 437:12–14, 424:25–425:3. Defendant asserts that the testimony of Mr. Kuhno and the text of his patent, when compared with Plaintiff's witnesses' testimony about the '967 patent leads to only one reasonable conclusion, contrary to the jury's verdict. Def.'s Reply *ISO* JMOL at 21. However, comparing the testimony of witnesses is not the providence of the the Court. The jury properly exercised its role in weighing the evidence and credibility of witnesses and decided in favor of Plaintiff. In light of the evidence presented at trial, a reasonable jury could have concluded that the Kuhno patent did not anticipate the '967 patent.

## III. Relief From Judgment — Fed. R. Civ. P. 59(e)

Defendant moves, in the alternative, for relief from judgment pursuant to Rule 59(e). Def.'s JMOL at 26. Defendant does not assert an alternative or additional basis for granting relief

from judgment. Rahter, Defendant conclusively states that it is entitled to relief under Rule 59(e) for the "same reasons" explained in arguing its Rule 50(b) and 60(b) motions. Def.'s JMOL at 26. The Court does not find highly unusual circumstances warranting relief from judgment pursuant to Rule 59(e).

**CONCLUSION**

For the reasons explained above, Defendant's Motions (ECF No. 591) pursuant to Fed. R. Civ. P. 50(b), 60(b), and 59(e) are DENIED.

DATED this 7th day of February 2024.

s/ Mustafa T. Kasubhai
MUSTAFA T. KASUBHAI (He / Him)
United States Magistrate Judge