UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| ADASA INC., | Case No. 6:17-cv-01685-MK |
| Plaintiff, | OPINION AND ORDER |
| vs. | Re: DEFENDANT'S MOTION FOR NEW TRIAL UNDER RULE 59 AND FOR RELIEF FROM JUDGMENT UNDER RULE 60(b) |
| AVERY DENNISON CORPORATION, | |
| Defendant. | |

**KASUBHAI,** United States Magistrate Judge:

Plaintiff Adasa Inc. brought this action alleging that Defendant Avery Dennison infringed its patent in violation of 35 U.S.C. §§ 271(a), (b), (c), and (f). Sec. Am. Compl., ECF No. 112.

OPINION AND ORDER — Page 1

Both parties consent to jurisdiction by a U.S. Magistrate Judge. ECF No. 29.

Before the Court is Defendant's motion for a new trial under Rule 59(a) and motion for relief from judgment under Rule 60(b). *See generally* Def.'s Mot. for New Trial & Mot. Relief from J., ECF No. 592 ("Def.'s Mot."). Defendant contends that a new trial is warranted because of the Court's numerous allegedly erroneous legal decisions. Defendant asserts that it is also entitled to relief from judgment because the Court's prior Rule 50(a) decision prohibited Defendant from presenting relevant evidence to the jury at the remand trial. For the reasons described below, Defendant's motions are DENIED.

## BACKGROUND

### I. General Background

Plaintiff Adasa Inc., an Oregon corporation, is the owner of United States Patent No. 9,798,967 (the "'967 Patent"). The '967 patent relates, in part, to methods and systems for commissioning radio-frequency identification (RFID) transponders. '967 patent at 3:27–32. RFID transponders, also known as RFID tags, are used, like barcodes, to identify and track objects by encoding data electronically in a compact label. *Id.* at 1:32–34. But unlike traditional barcodes, RFID tags need not include external readable labels and can instead communicate the data they encode over a distance using radio-frequency transmission. *Id.* at 1:34–53, 6:28–59.

To facilitate identifying and tracking an object in the stream of commerce, RFID tags are encoded with information associated with the object through a process known as "commissioning." *Id* at 1:40–53. The encoded data may include various categories of information, "for example, data representing an object identifier, the date-code, batch, customer name, origin, destination, quantity," etc. *Id.* at 1:45–50. Regardless of the specific categories

included, to ensure accurate tracking, it is critical that the data uniquely identify the tagged object. *Id.* at 2:21–22, 2:48–50.

In the RFID industry, uniqueness is ensured by assigning RFID tags an Electronic Product Code (EPC or EPCglobal) in accordance with certain global formatting standards. An EPC is a serialized object number comprising object class information and a serial number that together uniquely identify the associated object. *See id.* at 9:7–15. For example, the EPC may be a Serialized Global Trade Item Number (SGTIN), which consists of a Global Trade Item Number identifying the brand and class of the item (i.e., object class information) followed by a serial number uniquely identifying the tagged item within the brand and class. *Id.* Since objects from the same brand and class will share the same object class information, ensuring the uniqueness of the overall EPC amounts to ensuring uniqueness of the serial number. The '967 patent seeks to overcome certain shortcomings in the commissioning of unique serial numbers on RFID tags.

## II.     Procedural History

Relevant to this Opinion and Order, in October 2017, Plaintiff sued Defendant alleging its manufacture and sale of certain RFID tags infringed claim 1 of the '967 patent. Following discovery, both parties sought summary judgment. Discussed further below, the Court denied Defendant's motion for summary judgment on noninfringement and granted Plaintiff's motion for summary judgment that claim 1 is neither anticipated by U.S. Patent No. 7,857,221 (the "Kuhno patent") or the book *RFID for Dummies* nor rendered obvious by *RFID for Dummies* in combination with certain EPC standards. *Adasa Inc. v. Avery Dennison Corp.*, No. 6:17-CV-01685-MK, 2020 WL 5518184, at *2 (D. Or. Sept. 14, 2020), *aff'd in part, rev'd in part*, 55 F.4th 900 (Fed. Cir. 2022).  Additionally, the Court granted judgment in Plaintiff's favor that claim 1

was directed to an encoded RFID transponder implemented with a memory structure accommodating a specific hardware-based number scheme, effectively granting summary judgment in Plaintiff's favor as to patent eligibility under 35 U.S.C. § 101. *Id.* at *8.

The parties then proceeded to trial on the issues of infringement of claim 1 and damages. The jury returned a verdict of infringement and awarded Plaintiff a running royalty of $0.0045 per infringing RFID tag for a total award of $26,641,876.75. Thereafter, Defendant appealed, *inter alia*, the Court's summary judgment rulings. The Federal Circuit (1) affirmed the Court's holding that claim 1 is eligible under § 101 as a matter of law; (2) reversed the Court's grant of summary judgment that *RFID for Dummies* does not anticipate or render obvious claim 1; and (3) reversed the Court's grant of summary judgment of no anticipation based on the Kuhno patent, remanding for further proceedings. *Adasa Inc. v. Avery Dennison Corp.*, 55 F.4th 900, 910–13 (Fed. Cir. 2022).

During the remand proceedings, Defendant repeatedly sought to expand the scope of the Federal Circuit's mandate. Discussed further below, the Court excluded from evidence all prior arts besides the Kuhno patent and *RFID for Dummies*. On July 11, 2023, the parties again proceeded to trial. ECF No. 555 ("Remand Trial"). The jury was tasked with determining whether Defendant proved that claim 1 of the '967 patent (1) is anticipated by the Kuhno prior art; (2) is anticipated by the *RFID for Dummies* prior art; or (3) was obvious in light of *RFID for Dummies* prior art. Jury Verdict, ECF No. 577. On July 18, 2023, the jury returned the verdict in Plaintiff's favor on all three questions.

On August 17, 2023, Defendant filed the present motions for a new trial and for relief from judgment. ECF No. 592. For the reasons described below, Defendants motions are DENIED.

**LEGAL STANDARDS**

For issues not unique to patent law, such as sufficiency of the evidence on issues tried to the jury, the Court applies the law of the regional circuit in which it sits. *Duro-Last, Inc. v. Custom Seal, Inc.*, 321 F.3d 1098, 1106 (Fed. Cir. 2003). Here, the Ninth Circuit controls. Otherwise, for all substantive issues of patent law, the Court applies the law of the Court of Appeals for the Federal Circuit. *Id.*

I.  **Fed. R. Civ. P. 59(a)**

Defendant's request for a new trial is governed by Rule 59(a), which permits courts to grant requests for a new trial in limited circumstances. "Upon the Rule 59 motion of the party against whom a verdict has been returned, the district court has 'the duty . . . to weigh the evidence as [the court] saw it, and to set aside the verdict of the jury, even though supported by substantial evidence, where, in [the court's] conscientious opinion, the verdict is contrary to the clear weight of the evidence.'" *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (citation omitted, alteration in original). Bases for a new trial include: (1) a verdict against the clear weight of the evidence, *see Landes Const. Co., Inc.*, 833 F.2d at 137; (2) evidence, discovered after trial, that would not have been uncovered earlier through the exercise of due diligence and that is of such magnitude that its production at trial would likely have changed the outcome of the case, *see Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992–93 (9th Cir. 2001) (quoting *Defenders of Wildlife v. Bernal*, 204 F.3d 920, 929 (9th Cir. 2000)); (3) jury misconduct, *see United States v. Romero-Avila*, 210 F.3d 1017, 1024 (9th Cir. 2000); and (4) error in law that has substantially prejudiced a party, *see Ruvalcaba v. City of Los Angeles*, 64 F.3d 1323, 1328 (9th Cir. 1995). The decision to grant a new trial falls within the sound discretion of the trial court. *Kode v. Carlson*, 596 F.3d 608, 611 (9th Cir. 2010).

## II.     Fed. R. Civ. P. 60(b)(5)

Rule 60(b) permits a district court to relieve a party from a final judgment that was "based on an earlier judgment that has been reversed or vacated." Fed. R. Civ. P. 60(b)(5). Relief may also be warranted based on newly discovered evidence; fraud, misrepresentation, or misconduct by an opposing party; and any other reason that justifies relief. Fed. R. Civ. P. 60(b)(2)–(3), (6). However, relief from judgment under Rule 60(b) "should be granted sparingly to avoid manifest injustice and *only* where extraordinary circumstances prevented a party from taking timely action to prevent or correct an erroneous judgment." *Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144, 1173 (9th Cir. 2017) (quotations omitted).

## DISCUSSION

Defendant contends a new trial is necessary for seven reasons. The Court addresses each issue in turn.

## I.     Exclusion of the Paxar Prior Art

Defendant asserts that the Court erred in excluding evidence related to the tags printed with Paxar Corp.'s Secure Batch ID ("Paxar Art") in the remand proceedings. Def.'s Mot. at 7. Defendant contends that the Paxar Art is a prior art to the '967 patent and renders the '967 patent invalid.

Before the first trial, the Court denied Defendant's motion for summary judgment, holding "[i]n light of the dispute over the factual inquiry of motivation to combine, summary judgment of obviousness based on the Paxar Art is improper." *Adasa Inc.*, 2020 WL 5518184, at *7. The Court also granted summary judgment in Plaintiff's favor, disposing of Defendant's invalidity arguments based on the Kuhno patent and *RFID for Dummies*. *See Id.* Consequently, a factual dispute remained over Paxar but not Kuhno or *RFID for Dummies*. Nonetheless,

Defendant's pretrial memorandum characterized the Court's summary judgment rulings as stating "[t]hat the asserted claims are not obvious over Paxar Corp.'s prior art 'Secure Batch ID' method and the global SGTIN-96 standard, and are not anticipated or rendered obvious by [Kuhno] or *RFID for Dummies*." Def.'s Trial Memorandum at 2, ECF No. 229.

Following Defendant's pretrial memorandum, Plaintiff moved to *limine* out all prior art. Defendant responded "neither party proposes to instruct the jury on prior art invalidity issues, and neither party's proposed verdict form seeks any finding that the '967 patent is anticipated or obvious over the prior art." Def.'s Resp. in Opp. to Pl.'s Mot. in Limine at 2 n.1, ECF No. 249. The Court granted Plaintiff's motion in *limine*, excluding the Paxar Art. Because no evidence was presented at trial on anticipation or obviousness, at the close of Defendant's case-in-chief, the Court granted Plaintiff's Rule 50(a) motion on those issues.

On appeal, the Federal Circuit reversed the Court's summary judgment ruling on Kuhno and *RFID for Dummies*. Defendant did not appeal the Court's Rule 50(a) decision and its appellate briefing made no mention of Paxar or Plaintiff's motion in *limine*. To the extent that Defendant incorporated into its appeal additional rulings such as the Court's Rule 50(a) decision or its ruling on Plaintiff's motion in *limine*, the Federal Circuit "considered the parties' remaining arguments and f[ound] them unpersuasive." *Adasa Inc.*, 55 F4th at 917. On remand, the Court excluded evidence of the Paxar Art from the second trial.

Defendant contends that the Court's exclusion of the Paxar Art from the Remand Trial depended on the Court's Rule 50(a) ruling at the first trial, which it asserts has no persisting vitality after the Federal Circuit's reversal on anticipation and obviousness. Def.'s Mot. at 1. The Court disagrees. The Federal Circuit's remand was not an open invitation to relitigate the case. Regarding claim 1's validity, the Federal Circuit held there was a genuine issue of fact whether

*RFID for Dummies* or the Kuhno patent anticipated or rendered obvious claim 1. *Adasa Inc.*, 55 F.4th at 911, 913. As the Court previously explained:

> The appeal was very narrowly focused, and that was by terms that the defendant put forward at the appellate stage. For whatever tactical reasons or strategic reasons, that was the focus. [Defendant] w[as] able to succeed in getting the case remanded for the purposes of Kuhno and *RFID for Dummies* and that's it.

Transcript of Proceeding 4:15–19 ECF No. 545 (June 28, 2023 Pretrial Conference, denying Defendant's Motion for Reconsideration). Having thoroughly reviewed the arguments presented, the Federal Circuit's Mandate, and the well-developed record in this case, the Court finds that its exclusion of the Paxar Art from the Remand Trial provides no justifiable basis for granting a new trial.

In the alternative, pursuant to Rule 60(b)(5), Defendant moves for relief from judgment, asserting that the Court's Rule 50(a) ruling at the first trial was "based on an earlier judgment that has been reversed or vacated." Def.'s Mot. at 10 (quoting Fed. R. Civ. P. 60(b)(5)). However, the Court's Rule 50(a) decision was not entirely based on the subsequently reversed summary judgment ruling on Kuhno or *RFID for Dummies*. Rather, the Court based its Rule 50(a) decision on the fact that Defendant did not present any evidence at the first trial that the '967 patent was anticipated or made obvious by a prior art. Although the Court's summary judgment ruling excluded Kuhno and *RFID for Dummies*, simultaneously, the Court expressly held that a factual dispute remained over whether the Paxar Art rendered the asserted claims as obvious. *Adasa Inc.*, 2020 WL 5518184, at *7. Defendant discarded the use of the Paxar art as a defense when it stated in its response to Plaintiff's motion in *limine* that its proposed verdict form would not seek any finding that the '967 patent is anticipated or obvious by prior art. Because the Court based its Rule 50(a) decision on the lack of evidence presented a trial, a

consequence on Defendant's response to Plaintiff's motion in *limine*, the Court finds that its Rule 50(a) decision does not entitle Defendant to relief from judgment.

Defendant further asserts that it should have been permitted to introduce the Paxar Art at the Remand Trial as background knowledge of a Person of Ordinary Skill in the Art and that references to non-asserted prior art should not have been excluded from the deposition testimony of Mr. Williams. Def.'s Mot. at 12. Defendant's arguments are unpersuasive. The Court's exclusion of all non-asserted prior art was consistent with the narrow scope of the Remand Trial, as mandated by the Federal Circuit.

## II. Dr. Engels' Remand Trial Testimony

Defendant asserts that Dr. Engels' testimony at the Remand Trial improperly constructed claim 1 and that judicial estoppel entitles it to a new trial on anticipation and obviousness. Def.'s Mot. at 13. In affirming summary judgment on § 101 eligibility, the Federal Circuit explained that the '967 patent was not an abstract idea because "[i]n essence, the claimed MSBs function as an additional data field within the serial number space that uniquely identifies the allocated block from which it came." *Adasa Inc.*, 55 F.4th at 909. The basis for this conclusion, Defendant asserts, was contradicted at the Remand Trial by Dr. Engels' testimony that the '967 patent is "not the dividing of the field, it's simply how do I allocate a number, though really, how do I create a block of numbers that have the same most significant bits. There's no creation of a new field within the standard." 7/13/2023 Transcript of Proceedings at 748:11–14, ECF No. 572 (Trial Day 3). Defendant asserts that Dr. Engels' testimony about the nature of claim 1 should be judicially estopped, entitling it to a new trial on anticipation and obviousness. Def.'s Mot. at 13.

"[J]udicial estoppel, 'generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.'" *New*

OPINION AND ORDER — Page 9

*Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (quoting *Pegram v. Herdrich*, 530 U.S. 211, 227 n.8 (2000)). "[I]t is an equitable doctrine invoked by a court at its discretion." *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990) (citation omitted). "[S]everal factors typically inform the decision whether to apply the doctrine in a particular case: First, a party's later position must be 'clearly inconsistent' with its earlier position." *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (quoting *United States v. Hook*, 195 F.3d 299, 306 (7th Cir. 1999). "Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create 'the perception that either the first or the second court was misled.'" *Id.* (quoting *Edwards v. Aetna Life Ins. Co.,* 690 F.2d 595, 599 (6th Cir. 1982)). "A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* at 751.

      The Court is not aware of, and Defendant does not cite, any case law demonstrating that judicial estoppel is an appropriate vehicle for a new trial. This reason alone is a sufficient basis for the Court to exercise its discretion by not invoking the equitable doctrine. Additionally, as explained in the Court's Opinion and Order on Defendant's Rule 50(b) Motion, because the Federal Circuit relied directly on the language of claim 1, Dr. Engels' allegedly inconsistent testimony does not create the perception that the Federal Circuit was misled. *See* January 25, 2024 O&O, ECF No. 611. Moreover, the Court is not persuaded that Dr. Engels' testimony at the remand trial is clearly inconsistent with Plaintiff's earlier position. Rather, Dr. Engels' testimony—that there is no creation of a new field *within the standard*—does not directly contradict the Federal Circuit's explanation that the '967 patent describes the addition of a field

OPINION AND ORDER — Page 10

*within the serial number space*. A new trial is not warranted based on Dr. Engels' testimony at the Remand Trial.

**III.    Application of the Rules Governing Expert Opinions and Disclosures**

Defendant asserts that the Court committed prejudicial error by improperly excluding the opinion of its invalidity expert, Mr. Sweeny. Def.'s Mot. at 18–19. The prejudice of this supposed error was allegedly compounded at trial by Plaintiff's arguments in closing, noting that Defendant had not provided an expert opinion to support its position on anticipation and obviousness. Def.'s Mot. at 19. Defendant further asserts that a new trial is warranted because Dr. Engels' opinions were equally conclusory and thus the Court inconsistently applied its analysis when excluding Mr. Sweeny but not Dr. Engels.

The admissibility of an expert's testimony is governed by Rule 702 of the Federal Rules of Evidence as elaborated by the Supreme Court in *Daubert* and its progeny. In the context of the ultimate opinions of experts on patent validity, a district court's decision to admit expert testimony under Daubert in a patent case follows the law of the regional circuit. *Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1390–91 (Fed. Cir. 2003).

The Court has thoroughly considered the admissibility of Mr. Sweeny's expert opinion. *See* ECF No. 489 (June 2, 2023 Opinion and Order Re: Pl.'s Mot. to Exclude Testimony of Def.'s Invalidity Expert). Having reviewed its decision to exclude Mr. Sweeny and Defendant's present Motion, the Court finds that its decision to exclude Mr. Sweeny's expert opinion was not an error in law. Moreover, nothing in Defendant's briefing has persuaded the Court to deviate from its prior ruling regarding its treatment of Plaintiff's expert. Ultimately, the Court's review of its application of the rules governing expert opinions and disclosures does not leave the Court

OPINION AND ORDER — Page 11

"with the definite and firm conviction that a mistake has been committed." *Landes Constr. Co. v. Royal Bank of Can.*, 833 F.2d 1365, 1372 (9th Cir. 1987) (internal quotations omitted).

### IV. Admission of Evidence From Dr. Engels' Hard Drive and Denial of a Continuance

Defendant asserts that the Court improperly admitted documents from Dr. Engels' hard-drive that should have been produced in response to Defendant's requests years earlier. On June 27, 2023, Plaintiff's expert, Dr. Engels, disclosed to Plaintiff that he had found an old hard-drive containing information that may be relevant to the case. Later that day, Plaintiff notified Defendant that it had uncovered newly discovered evidence that was responsive to Defendant's prior request for production. Because trial was scheduled to begin on July 11, 2023, the parties began negotiating an expedited production process. Several hearings were held on the matter and ultimately, the Court found that Plaintiff was not at fault for producing Dr. Engels' hard drive mere weeks before the start of the Remand Trial.

Defendant does not cite to a legal authority to explain why the admission of documents from Dr. Engels' hard-drive was a legal error or demonstrate how the supposedly erroneous admission warrants a new trial under Rule 59(a). The Court finds that the evidentiary admission was not a legal error and that a new trial is not necessary "to prevent a miscarriage of justice." *Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 510 n.15 (9th Cir. 2000).

Defendant also asserts that a new trial is warranted because the Court allegedly committed prejudicial error by denying Defendant's request for a six month continuance. "The decision to grant or deny a requested continuance lies within the broad discretion of the district court, and will not be disturbed on appeal absent clear abuse of that discretion." *United States v. Flynt*, 756 F.2d 1352, 1358 (9th Cir. 1985). "A district court abuses its discretion if its denial of a

continuance is 'arbitrary or unreasonable.'" *United States v. Kloehn*, 620 F.3d 1122, 1127 (9th Cir. 2010) (quoting *Flynt*, 756 F.2d at 1358). The four-factor test set out in *Flynt* is informative. *Kloehn*, 620 F.3d at 1127. In accordance with *Flynt*, courts consider (1) the moving party's diligence in preparation prior to moving for a continuance; (2) the usefulness of the continuance and the likelihood of achieving its intended purpose if it had been met; (3) the inconvenience to the court and the nonmoving party; and (4) the extent of harm as a result of the denial. *Id.*

The Court's decision to deny Defendant's request for a continuance was not arbitrary or unreasonable. The first factor weighs slightly in favor of Defendant. The request for the continuance arose out of Plaintiff's disclosure of Dr. Engels' hard-Drive approximately two weeks before the start of trial. However, Defendant's desire to reopen discovery relates largely to the fact that on the eve of trial, it still did not have an expert to opine on anticipation or obviousness, a reflection of the diligence of Defendant's preparation. The second and third factor weigh against Defendant. Defendant was able to review the emails contained on Dr. Engels' hard-drive in an expedited manner. Plaintiff filed its Complaint in October of 2017 and Defendant's requested continuance would have pushed the start of trial to November of 2023. Defendant's desire to reopen both fact and expert discovery and the likely success of putting together an expert on anticipation and obviousness after years of litigating this case was far outweighed by the substantial inconvenience to the Court and to Plaintiff. The inconvenience of the continuance would have exceeded the inconvenience of a delay in most cases. On the final factor, the majority of Defendant's harm does not arise out of the denial of the continuance. Rather, the majority of Defendant's harm relates to its failure to properly admit the documents on the hard-drive into evidence. Discussed further in section V below, during questioning at trial, the Court allowed Defendant's counsel additional time to review the federal rules of evidence,

yet Defendant was unable to establish the proper foundation to admit evidence under the business records exception and did not move to admit the emails for a non-hearsay purpose.

Moreover, although the *Flynt* factors are instructive, "whether a district court abuse[s] its discretion in denying a continuance is a 'case-by-case inquiry . . . bound by no particular mechanical test.'" *Kloehn*, 620 F.3d at 1127 (quoting *Armant v. Marquez*, 772 F.2d 552, 556 (9th Cir.1985)). Based on the Court's extensive familiarity of the facts and circumstances surrounding the request for a continuance in this case, the Court finds that its decision to deny Defendant's continuance was not arbitrary or unreasonable.

## V. Exclusion of emails Proffered at Trial

First, Defendant asserts that the Court erred in excluding certain emails on Dr. Engels' hard-drive. Defendant asserts that these emails were admissible because they fell within the business-record exception to the hearsay rule. The Court disagrees.

The business-record exception to the hearsay rule states that records of a regularly conducted activity will not be excluded so long as:

> (A) the record was made at or near the time by--or from information transmitted by--someone with knowledge;
>
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
>
> (C) making the record was a regular practice of that activity;
>
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
>
> (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

OPINION AND ORDER — Page 14

Fed. R. Evid. 803(6).

Defendant was unable to lay the proper foundation for many of the emails on Dr. Engels' hard-drive. As one example, during its examination of Dr. Engels regarding DTX299, Defendant asked:

> Q. And this [email] was sent to you by someone with the knowledge of the contents of the emails; correct?
> A. I will not speak for the person as to what they knew about the email. I'll just say that they forwarded the email to me.

7/14/2023 Transcript of Proceedings, 850:25–851:1–4, ECF No. 573 (Trial Day 4). The Court sustained Plaintiff's hearsay objection because Defendant could not establish that it was sent by someone with knowledge of the event(s) documented in the email. *Mays v. United Ass'n Loc. 290 Apprenticeship & Journeymen Training Tr. Fund*, 407 F. Supp. 3d 1121, 1142 (D. Or. 2019); Fed. R. Evid. 803(6)(A) and (D). The Court did not commit legal error, the exclusion of the emails was based on Defendant's failure to lay the proper foundation during trial.

Second, Defendant asserts that during the remand proceedings, the Court improperly excluded emails from Dr. Engels' hard-drive that Defendant offered for the non-hearsay purpose of effect on listener. The record demonstrates otherwise. The Court declined to pre-admit these exhibits but stated that Defendant was free to ask Dr. Engels about the emails when called to the stand, where it could offer them for a non-hearsay purpose. Ex. B 679:13–25 ECF No. 598-3. Had Defendant proffered the emails for a non-hearsay purpose *during* Dr. Engels' testimony, the Court could have made a ruling. But the Court did not—and cannot—err on a ruling it was never asked to make. *See* Trial Day 4 at 880:23–25–881:1–24. Moreover, because Defendant had the

OPINION AND ORDER — Page 15

opportunity to proffer during its examination of Dr. Engels and chose not to, any supposed error in the Court's pre-admission ruling does not rise to the level of prejudice warranting a new trial.

## VI. Admission of PTX19 Without Foundation Requires a New Trial

PTX19 is an internal Avery Dennison document dated March 5, 2010, apparently discussing Defendant's "recommended commissioning schema for Private Brands for the Walmart item marking initiative." Def.'s Mot. Ex. 11, ECF No. 592-12. Plaintiff relied on PTX19 during opening and closing to argue that Defendant copied the '967 patent. Defendant asserts that the Court committed prejudicial error by admitting PTX19 without requiring Plaintiff to lay a foundation and authenticate the document with a trial witness. According to Defendant, the Court's receipt of PTX19 into evidence was conditioned on Plaintiff later using the document with a witness who would lay a foundation, which never occurred. Def.'s Mot. at 28.

The Court finds that the admission and use of PTX19 without requiring Plaintiff to lay a foundation was not an error because the Court explained its process of admitting exhibits without objection and Defendant expressly stated that it did not object. Defendant had initially stated that it did not have any objection to a number of exhibits, including PTX19. However, during Plaintiff's use of PTX19 during its questioning of a witness, Defendant objected. To clarify the apparent confusion about what it meant to have no objections to an exhibit, the Court discussed the matter with Counsel outside the jury's presence. The Court informed Defendant that if it now had an objection to the admission of PTX19 then it could object and Plaintiff would then be required to lay a foundation. Trial Day 3 at 526:7-17. Defendant affirmed its understanding of this practice. *Id.* at 528:3-4. Defendant then stated that it would not object to admission of PTX19 "*as long as* [Plaintiff] ha[s] laid the foundation." *Id.* at 528:14-15 (emphasis added). The Court rejected Defendant's conditional non-objection and explained "if you have a legitimate

issue about admissibility, raise it so we can minimize the need for all of these to have to be -- for all these to have come in through the normal course of laying a foundation." *Id.* at 529:23-25-530:1. The Court then asked Defendant what it was intending on doing with Plaintiff's offer of PTX19 and the other exhibits presently before the Court. *Id.* at 531:1-2. Defendant responded "we just have to look through the exhibits, and if there are no objections to them on the record, then that's fine with us." *Id.* at 531:3-5. Plaintiff then began offering its exhibits:

> MR. SUDER [(Plaintiff's Counsel)]: 19, 20, and 21. For the record, Your Honor, 19 was never objected to. And 20 and 21, they lodged objections, and in your omnibus order, you overruled them. We have hard copies for you.
>
> MR. BRAHMA [(Defendant's Counsel)]: That would be great, or if we could put them up on the screen. 19 was the one we discussed yesterday, I believe. Your Honor, I think 19 is un-objected to, and I think you had said 20 and 21 were overruled. *So we have no objection*.
>
> THE COURT: 19, 20, and 21 are received.

*Id.* at 532:23-25-533:6-8 (emphasis added).

The record shows that Defendant did understand that if it objected to the admission of PTX19 then it needed to do so, without enumerating conditions. Defendant had the opportunity to make such objections. For example, following Defendant's non-objection to the admission of PTX19, Defendant objected to the admission of exhibit 33 based on lack of foundation. *Id.* at 534:10-14. The Court acknowledged Defendant's objection and stated, "So 33, not yet received, and I've already mentioned on the record those for which there were no objections that I received." *Id.* at 535:2-4. The Court did not commit error in receiving PTX19 because it received PTX19 without Defendant's objection.

OPINION AND ORDER — Page 17

## VII. Defendant's Motion for Judgment as a Matter of Law

Lastly, Defendant incorporates by reference the arguments outlined in its Rule 50(b) Motion, ECF No. 591, as a basis for granting a new trial pursuant to Rule 59(a). For the reasons articulated in the Court's Opinion and Order on Defendant's Rule 50(b) Motion, ECF No. 611, Defendant's arguments are insufficient to warrant granting a new trial under Rule 59(a).

## CONCLUSION

For the reasons explained above, Defendant's Motions (ECF No. 592) pursuant to Fed. R. Civ. P. 59(a) and 60(b) are DENIED.

DATED this 9th day of February 2024.

s/ Mustafa T. Kasubhai<br>
MUSTAFA T. KASUBHAI (He / Him)<br>
United States Magistrate Judge